United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2004**

Charles R. Fulbruge III
Clerk

REVISED MAY 18, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 03-10728

———————————

MARTIN K EBY CONSTRUCTION COMPANY INC

Plaintiff - Appellant

v.

DALLAS AREA RAPID TRANSIT

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, Chief Judge, and BENAVIDES and CLEMENT, Circuit Judges.

KING, Chief Judge:

Plaintiff-Appellant Martin K. Eby Construction Company, Inc. (Eby) appeals the district court's judgment dismissing its action against Defendant-Appellee Dallas Area Rapid Transit (DART). Agreeing with the lower court that Eby must exhaust administrative remedies before pursuing this action, we affirm.

## I. Background

### A. Facts

DART is a regional transportation authority created under

Chapter 452 of the Texas Transportation Code.  See Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 317 (5th Cir. 2001); see also In re Dallas Area Rapid Transit, 967 S.W.2d 358, 359 (Tex. 1998).  In April 2002, after a competitive-bidding process, DART awarded to Eby a contract to build a section of DART's light-rail transit line near downtown Dallas.  Construction commenced in June 2002.  During the first six months of work on the project, Eby made little progress.  According to Eby, this delay was caused by numerous deficiencies and inaccuracies in the designs that were contained in DART's bid solicitation.  In DART's view, however, Eby bears significant responsibility for the construction delays.  Regardless of the cause of the delays, we must determine whether Eby can pursue its suit without first exhausting administrative remedies.

DART's Administrative Dispute-Resolution Process

DART's bid solicitation for the light-rail project--which is incorporated into the parties' contract as an exhibit--contains a provision stating that the bidder, by responding to the solicitation, "agrees to exhaust its administrative remedies under . . . [1] [DART]'s Procurement Regulations or [2] the Disputes Clause of any resulting contract" before "seeking judicial relief of any type in connection with any matter related to this solicitation, the award of any contract, and any dispute under any resulting contract."  DART's procurement regulations contain procedures for resolving disagreements with its

2

contractors.  They were promulgated in accordance with express statutory authority; the Texas Legislature has empowered regional transportation authorities, such as DART, to "adopt and enforce procurement procedures, guidelines, and rules . . . covering: [inter alia] the resolution of . . . contract disputes."  Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 452.106(a)(2)(C) (Vernon 1999).  Also, the contract between DART and Eby contains a disputes clause, which requires the contractor, Eby, to submit its grievances to DART's administrative process before seeking judicial review.

DART's procurement regulations and the contract's disputes clause both provide for a similar administrative dispute-resolution process, and the regulations contain greater detail. Both encompass a broad range of potential disagreements.  The disputes clause applies to "any dispute concerning a question of fact or law arising under or related to [the] contract." Expounding on the coverage of DART's administrative process, DART's regulations state that the process covers "controversies between [DART] and a contractor which arise under, or by virtue of, a contract between them," including, "without limitation, controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification, reformation, or rescission."  The regulations further explain that the "word 'controversy' is meant to be broad and all-encompassing," applying to "the full spectrum of disagreements from pricing of routine contract changes to claims of breach of

3

contract."

The regulations and the disputes clause both mandate that controversies be submitted to the contracting officer--the person executing the contract on behalf of DART--for resolution.[1]  The decision of the contracting officer is final unless the contractor appeals within ninety days.  Administrative appeals are heard by DART's authorized representatives, who are mostly current or former members of the federal Armed Services Board of Contract Appeals.  DART also has promulgated a set of extensive procedural rules for adjudicating appeals; the rules envision a quasi-judicial proceeding that includes, among other things, discovery and a de novo hearing where the contractor can be represented by counsel.

Regarding the finality of the administrative decision, the regulations and the disputes clause contain nearly identical language: "The decision . . . shall be final and conclusive as to questions of fact unless determined by a court of competent jurisdiction to have been fraudulent, capricious, arbitrary, so grossly erroneous as necessarily to imply bad faith, or not

---

[1]     Eby complains that the disputes clause does not require DART to submit its grievances to the administrative process.  But both DART's regulations and the disputes clause indicate that the dispute-resolution process is intended to resolve all conflicts between the parties.  Further, DART's regulations contain a provision explicitly stating that "[a]ll controversies involving claims asserted by [DART] against a contractor which cannot be resolved by mutual agreement shall be the subject of a decision by the Contracting Officer."

4

supported by substantial evidence."[2]  Further, the administrative

resolution is not final on questions of law.  The regulations and

the disputes clause permit a dissatisfied contractor to seek

judicial review of the administrative decision within two years

of the contractor's receipt of the decision.

Although Eby did not submit its grievances to the

administrative process described above, it asserts that it

complained to DART regarding the allegedly inadequate bid

specifications.  According to Eby, DART neither accepted

responsibility for the design defects nor compensated Eby for

most of the cost overruns that it had incurred in performing the

work.[3]  Substantial construction remains to be done, and Eby

anticipates significant additional losses if it is forced to

complete the project.  Frustrated with this state of affairs, Eby

filed suit in federal court against DART in January 2003.

B.    **Proceedings in the District Court**

In its complaint, Eby pleaded two causes of action: breach

---

[2]     At various places in its brief, Eby claims that DART's
administrative process intends to resolve conclusively any
questions of fact.  But, as shown here, DART's procurement
regulations and the disputes clause of the parties' contract both
provide for substantial-evidence review of DART's findings of
fact.  Regardless, we do not, in this appeal, express any opinion
on the extent to which a subsequent court should defer to any
findings of fact made during DART's administrative process.

[3]     Eby's complaint acknowledges that DART has paid Eby for
individual change-order claims filed by Eby in accordance with
the contract.  But Eby maintains that this procedure is
inadequate to compensate it for the losses it has suffered and
will continue to suffer.

5

of contract and misrepresentation.  As remedies, Eby sought rescission of the agreement and compensation on a quantum meruit basis.  In response, DART moved to dismiss, contending first that Eby had failed to state a claim on which relief could be granted because it had not exhausted its administrative remedies.  Second, DART asserted that Eby's misrepresentation claim should be dismissed because it is a tort claim and governmental immunity bars tort claims against DART.

The district court granted DART's motion to dismiss both of Eby's claims under Rule 12(b)(6).  First, the court held that Eby could not pursue its breach-of-contract claim without first exhausting the administrative procedure that has been established by DART in accordance with Texas statutory law and incorporated into the parties' contract.[4]  Second, the court concluded that governmental immunity bars Eby's tort claim of misrepresentation.  Accordingly, in July 2003, the district court entered a judgment that Eby take nothing on its claims against DART.[5]  Eby appeals, challenging both of the district court's rulings.

---

[4]    Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies.  <u>Taylor v. United States Treasury Dep't</u>, 127 F.3d 470, 476-78 & n.8 (5th Cir. 1997).

[5]    When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies.  <u>See</u> <u>Taylor</u>, 127 F.3d at 478; <u>Crawford v. Tex. Army Nat'l Guard</u>, 794 F.2d 1034, 1035, 1037 (5th Cir. 1986).

## II. Standard of Review

The grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo. Gregson v. Zurich Am. Ins. Co., 322 F.3d 883, 885 (5th Cir. 2003). Further, this court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). "Thus, the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." Id.

## III. Eby's Breach-of-Contract Claim

Eby maintains that the district court erred by requiring it to exhaust DART's administrative dispute-resolution process before seeking relief for breach of contract in a court of law. It challenges both the district court's reliance on the parties' contract and the court's reliance on the dispute-resolution procedures promulgated by DART at the direction of the Texas Legislature. Defending the district court's judgment, DART primarily contends that the doctrine of exhaustion of administrative remedies requires Eby to submit its grievances to DART's administrative process before pursuing judicial review. Alternatively, DART relies on both its bid solicitation and the parties' contract in maintaining that Eby agreed to exhaust administrative remedies before seeking judicial review.

7

As DART asserts, Texas courts generally do require a party to exhaust its administrative remedies before seeking judicial review of the decision of a governmental entity. See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc., 92 S.W.3d 477, 484-85 (Tex. 2002); Tex. Educ. Agency v. Cypress-Fairbanks I.S.D., 830 S.W.2d 88, 89-90 & n.1 (Tex. 1992); Tex. State Bd. of Exam'rs in Optometry v. Carp, 343 S.W.2d 242, 246-47 (Tex. 1961); Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera, 981 S.W.2d 728, 732 (Tex. App.--Houston [1st Dist.] 1998, pet. denied); Caspary v. Corpus Christi Downtown Mgmt. Dist., 942 S.W.2d 223, 226 (Tex. App.--Corpus Christi 1997, writ denied); Bandera Downs, Inc. v. Alvarez, 824 S.W.2d 319, 321 (Tex. App.--San Antonio 1992, no writ); see also Glasscock Underground Water Conservation Dist. v. Pruit, 915 S.W.2d 577, 580 (Tex. App.--El Paso 1996, no writ) ("In most instances, a party must exhaust available administrative remedies before resorting to the courts." (citing Webb County Appraisal Dist. v. New Laredo Hotel, Inc., 792 S.W.2d 952, 954 (Tex. 1990))). But, as Eby notes, none of these cases is precisely on point; they all deal with administrative procedures codified in a statute.[6] DART's dispute-resolution process, by contrast, is found only in its own procurement regulations and in the parties' contract.

_____

[6]    Cf. Taylor, 127 F.3d at 476-77 (applying the "jurisprudential exhaustion doctrine" and dismissing plaintiff's suit against the IRS for failure to exhaust the IRS's non-statutory administrative procedure for Privacy Act requests).

Thus, this case presents a question of first impression in Texas--i.e., whether a contractor can sue a regional transportation authority for breach of contract without first submitting its claim to the authority's administrative process. As we explain below, we conclude that the Texas Supreme Court, if faced with this situation, would hold that Eby must first exhaust the administrative remedies provided in DART's regulations before pursuing a breach-of-contract action in a court of law. See, e.g., Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 406 (5th Cir. 2004) (stating the general rule that, when faced with an unsettled question of substantive state law in a diversity case, a federal court must make an "Erie-guess" as to how the state's highest court would answer the question).

Eby asserts that, because DART lacks governmental immunity from Eby's breach-of-contract claim, Eby has the right to sue without first exhausting administrative remedies. Eby argues that, under Texas law, DART waived its governmental immunity from Eby's breach-of-contract action by contracting with Eby. Eby is half right. In Texas, governmental immunity embraces two principles: "immunity from suit and immunity from liability." Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002). Thus, although Eby is correct that DART waived immunity from liability by contracting with Eby, DART retains immunity from suit on the contract, unless that immunity has been expressly waived. Id. ("When a governmental entity contracts

9

with a private party . . . it is liable on its contracts as if it were a private party.  But a governmental entity does not waive immunity from suit simply by contracting with a private party.  Express consent is required to show that immunity from suit has been waived." (citations omitted)).

Eby maintains that DART's immunity from suit has been waived by the Texas Legislature.  In Eby's view, the Legislature waived DART's governmental immunity from suit by declaring in DART's enabling legislation that it "may sue and be sued."  TEX. TRANSP. CODE ANN. § 452.054(b).  Texas courts are divided, however, on whether such language is sufficiently clear and unambiguous to constitute a waiver of immunity.  See, e.g., Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist., 123 S.W.3d 63, 65-68 (Tex. App.--Dallas 2003, no pet.) (disagreeing with several other Texas Courts of Appeals and holding that "sue and be sued" language does not waive a governmental entity's immunity).  In any event, Eby's argument is beside the point.  Even if DART lacks governmental immunity, as Eby argues, Eby would not be relieved of its obligation to exhaust administrative remedies.

Eby cites no authority for the proposition that a plaintiff is only required to exhaust administrative remedies against a defendant who enjoys governmental immunity.[7]  Cf. State v. Fid. &

_____

[7]     Eby contends that General Services Commission v. Little-Tex Insulation Co., 39 S.W.3d 591 (Tex. 2001), does stand

10

<u>Deposit Co. of Md.</u>, 127 S.W.3d 339, 345-47 (Tex. App.--Austin 2004, no pet.) (holding that the State waived its sovereign immunity from the defendant's counterclaims by filing suit, and then separately analyzing whether the defendant's counterclaims must nonetheless be dismissed for failure to exhaust statutorily prescribed administrative remedies). On the contrary, since DART's administrative process culminates in the opportunity for judicial review, it makes little sense to say that the process is

for such a proposition. But <u>Little-Tex</u> is inapposite. Recall that, although the State of Texas waives immunity from liability by entering into an agreement, it generally retains immunity from suit on its contracts. In <u>Little-Tex</u>, the Texas Supreme Court considered whether the State waives its immunity from suit by accepting benefits under a contract. <u>Id.</u> at 595. The Court took note of the Texas Legislature's recent enactment of a detailed statute governing the resolution of certain contract claims against the State. <u>See</u> TEX. GOV'T CODE ANN. §§ 2260.001–.108 (Vernon 2000). (This statute does not apply to claims against political subdivisions like DART. <u>See</u> <u>id.</u> § 2260.001(1), (4); <u>Stephens v. Dallas Area Rapid Transit</u>, 50 S.W.3d 621, 632–34 (Tex. App.--Dallas 2001, pet. denied) (holding that DART is both a governmental entity and "a legally constituted political subdivision of the state").) This newly enacted legislation established an administrative process to which plaintiffs must submit their claims before seeking the Legislature's consent to sue the State under Chapter 107 of the Texas Civil Practice and Remedies Code. TEX. GOV'T CODE ANN. § 2260.005. The Court rejected the plaintiffs' waiver-by-conduct argument "in light of the Legislature's enactment of" this administrative process for disposing of contract claims against the State. <u>Little-Tex</u>, 39 S.W.3d at 597. True, the <u>Little-Tex</u> opinion indicates that a plaintiff does not have to submit to the administrative procedures in Chapter 2260 of the Texas Government Code if she has already obtained the Legislature's consent to sue, since the process serves as a prerequisite to requesting such consent. <u>Id.</u> But, while the obligations of this particular administrative scheme are tied to the existence of governmental immunity, <u>Little-Tex</u> does not state, or even imply, that exhaustion of administrative remedies is generally not required when a defendant lacks governmental immunity from suit.

enforceable only if DART is immune from suit in a court of law. Further, while Eby focuses heavily on the apparent waiver of governmental immunity in DART's enabling legislation, it ignores the fact that the very same legislation also explicitly delegated to DART the power to "adopt and enforce" dispute-resolution procedures, TEX. TRANSP. CODE ANN. § 452.106(a)(2)(C) (emphasis added), strongly suggesting that participation in those procedures is not merely voluntary. Put another way, the Legislature's waiver of DART's governmental immunity does not equate to permission for contractors to sue DART without first submitting their claims to the statutorily authorized administrative process. Although the Legislature may have intended to waive DART's governmental immunity, it also seems to have intended to require contractors to submit their claims to DART's administrative process before bringing suit. To conclude otherwise would fail to give effect to the language of Section 452.106(a)(2)(C). See, e.g., Perkins v. State, 367 S.W.2d 140, 146 (Tex. 1963) ("[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible.").

In addition, Eby--both by submitting a bid and by entering into the contract--agreed to submit its claims to DART's

12

administrative process.[8]  Nevertheless, Eby contends that DART

cannot enforce Eby's agreement to submit its disputes with DART

to DART's administrative process because Eby has alleged material

breach.  Eby correctly states the general rule that, when a party

materially breaches a contract, the nonbreaching party can cease

performance and sue.  But the cases cited by Eby all involve

appeals from a verdict against the breaching party.  See Graco

Robotics, Inc. v. Oaklawn Bank, 914 S.W.2d 633, 637 (Tex. App.--

Texarkana 1995, no writ); Tribble & Stephens Co. v. Consol.

---

[8]      We note that this court has enforced a contractually
established disputes procedure in a federal government contract.
See Patton Wrecking & Demolition Co. v. TVA, 465 F.2d 1073 (5th
Cir. 1972).  (Several years after we decided Patton Wrecking,
Congress enacted the Contract Disputes Act of 1978, as amended,
41 U.S.C. §§ 601-613, which requires federal government
contractors to submit their claims to an administrative dispute-
resolution process that is somewhat similar to DART's, see id.
§§ 605-609.)  Eby argues that we should not look to Patton
Wrecking for guidance, since the Wunderlich Act, 41 U.S.C.
§§ 321-322, governed judicial review of the administrative
determination in that case, see 465 F.2d at 1078.  Eby portrays
the Wunderlich Act as a restrictive piece of legislation that
curtails the rights of contractors, and Eby asserts that Texas
law affords it greater rights than federal-government contractors
subject to the Act.  But Eby fails to recognize that Congress
passed the Wunderlich Act to protect contractors and to overrule
a Supreme Court decision that essentially had eliminated, absent
fraud, judicial review of administrative determinations rendered
under disputes clauses in federal-government contracts.  See
Revision Notes and Legislative Reports, 41 U.S.C.A. § 321 (West
1987); United States v. Wunderlich, 342 U.S. 98, 100-01 (1951).
The Wunderlich Act requires judicial review--under standards
substantially similar to those provided in DART's regulations and
disputes clause--of administrative adjudications of disputes
arising under federal-government contracts.  See 41 U.S.C.
§§ 321-322.  We therefore view Patton Wrecking as a relevant
guidepost that counsels in favor of enforcing Eby's promise to
exhaust administrative remedies.

13

<u>Servs., Inc.</u>, 744 S.W.2d 945, 947 (Tex. App.--San Antonio 1987, writ denied); <u>Shintech Inc. v. Group Constructors, Inc.</u>, 688 S.W.2d 144, 147 (Tex. App.--Houston [14th Dist.] 1985, no writ); <u>see also</u> <u>Brown & Root U.S.A., Inc. v. J.I. Ramirez Constructors, Inc.</u>, No. 04-95-00200-CV, 1997 WL 61488, at *3 (Tex. App.--San Antonio Feb. 12, 1997, no writ) (not designated for publication) ("<u>Once a breach by Brown & Root was established</u>, the contractual conditions to seeking further relief were dispensed with or relinquished by Brown & Root . . . ." (emphasis added)). None addresses a motion to dismiss for failure to exhaust administrative remedies. Eby provides no authority for the proposition that, merely by alleging material breach, it can avoid its obligation to exhaust administrative remedies before pursuing its breach-of-contract claim in court.

As we have said in the context of determining whether a plaintiff has stated an actionable claim for relief, "[w]hile the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." <u>Kansa Reins. Co. v. Cong. Mortgage Corp. of Tex.</u>, 20 F.3d 1362, 1366 (5th Cir. 1994) (citation omitted). Similarly, we believe (contrary to Eby's assertion) that the district court, in adjudicating DART's Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies, was not required to treat the contract between DART and Eby as having been materially breached and therefore rescinded. Accordingly,

14

we conclude that Eby's allegation of material breach does not prevent enforcement of its promise to exhaust DART's administrative dispute-resolution process before filing suit.[9]

In sum, the Texas Legislature has delegated to DART the authority to adopt and to enforce administrative procedures for resolving disputes with its contractors, and Eby has agreed to submit its contractual disputes with DART to DART's administrative process. Having failed to exhaust its administrative remedies, Eby nonetheless seeks to proceed with this suit. We conclude that, if the Texas Supreme Court were to confront this situation, it would hold that Eby must exhaust the administrative remedies provided in DART's dispute-resolution procedures before seeking relief on the parties' contract in a court of law.

## IV. Eby's Misrepresentation Claim

Viewing Eby's misrepresentation claim as one sounding in tort, the district court dismissed it as barred by governmental immunity. Although Eby concedes that DART enjoys immunity from tort claims, Eby asserts that the district court erred in dismissing its misrepresentation claim because (says Eby) it is a

---

[9] Eby also complains that DART's administrative procedures and the disputes clause of the parties' contract impermissibly limit the remedies that it can seek for breach of contract. We do not decide here the remedies that will be available to Eby in a subsequent proceeding in federal or state court after it properly has exhausted DART's administrative process.

quasi-contractual cause of action--not a tort claim.  This, Eby reasons, is because Texas law recognizes an equitable right to rescind a contract when one of the parties was induced to enter into the contract by a misrepresentation of fact, such as inadequate bid specifications.  Eby therefore concludes that governmental immunity does not bar its quasi-contractual misrepresentation claim against DART.

DART rejects Eby's characterization of this claim as quasi-contractual, asserting that causes of action based on misrepresentation sound in tort under Texas law.  Thus, DART concludes that the district court correctly dismissed Eby's misrepresentation claim as barred by governmental immunity.  Alternatively, DART maintains that its administrative process covers this claim, regardless of whether it is labeled a contract claim or a tort claim.  DART therefore contends that, even if it is not immune from this claim, Eby must still exhaust the claim before seeking judicial review.

We begin by pointing out that Eby's misrepresentation claim appears to be redundant to its first cause of action for breach of contract.  In its complaint, Eby's primary allegation in support of its breach-of-contract claim is that the designs contained in DART's bid solicitation were materially inadequate and that DART therefore breached its duty to furnish reasonably accurate bid information.  Then, under the heading "misrepresentation," Eby averred that it had justifiably relied

16

to its detriment on misrepresentations made by DART in its bid materials to the effect that those materials were sufficiently accurate to be relied on for development of a bid price.  While the language employed differs somewhat, the gravamen of both of Eby's claims is that DART's bid specifications contained material misrepresentations.

When pressed at oral argument to identify the difference between its two claims, Eby responded by noting that it alleged, in its first count, that DART's breach involved refusal to cooperate with Eby in resolving the problems caused by the deficient bid materials.  Thus, Eby asserted that its first claim encompasses performance issues, which are not duplicated by the misrepresentation claim.  Even so, Eby has shown only that its first claim includes allegations not present in its second claim; it has not demonstrated that the averments in its second claim add to what is alleged in the first count.  Moreover, Eby seeks the same contractual relief on both claims: rescission and recovery in quantum meruit.  Eby's misrepresentation claim is, therefore, just a subset of its breach-of-contract claim.

With this in mind, it is clear that Eby's misrepresentation claim, as it is presented here, is a contractual one.  See RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by

17

the recipient."). Thus, the district court erred in dismissing this claim as a tort claim barred by governmental immunity. Nevertheless, we affirm the district court's dismissal of Eby's misrepresentation claim. Since DART's administrative process is certainly broad enough to encompass this claim, see supra Part I(A), it also must be exhausted, for the reasons discussed above in Part III. We accordingly affirm the district court's dismissal of this claim, although not on the basis of governmental immunity. See, e.g., Chiu v. Plano Indep. Sch. Dist., 339 F.3d 273, 283 (5th Cir. 2003) ("This Court may affirm on grounds other than those relied upon by the district court.").

## V. Conclusion

Accordingly, we affirm the judgment of the district court dismissing Eby's suit.