United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 24, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————

No. 04-10914

———————

GLF CONSTRUCTION CORPORATION,

Plaintiff-Appellant,

versus

LAN/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc.;
STV INCORPORATED,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas

Before REAVLEY, JONES, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

GLF Construction Corporation ("GLF") appeals the district court's order granting summary

judgment on GLF's tort claims against LAN/STV, a joint venture of Lockwood, Andrews &

Newman, Inc. and STV Incorporated.[1] Our focus on appeal is whether that dismissal was premised

---

[1] The style of this appeal erroneously suggests that STV Incorporated is a separate defendant. In fact, STV Incorporated, along with Lockwood, Andrews & Newman, is involved only as a member of the joint venture that is LAN/STV.

on a correct interpretation of TEX. REV. CIV. STAT. ANN. art. 6550d (Vernon Supp. 2004-2005), a provision defining the scope of derivative sovereign immunity for independent contractors performing the functions of government entities.

I

LAN/STV entered into a contract (the "Engineering Contract") with Dallas Area Rapid Transit ("DART"). The contract called for LAN/STV to prepare plans, drawings, and specifications for the construction of an extension to the light rail system in Dallas, Texas (the "Project"). The Engineering Contract also required LAN/STV to provide administrative and supervisory services for the Project. DART provided LAN/STV's plans to general contractors, who would then submit bids to DART for the contract to construct the Project. DART awarded the contract for construction of the extension (the "Construction Contract") to GLF. The Construction Contract bound GLF to complete the Project in accordance with the plans, drawings, and specifications prepared by LAN/STV, and under the supervision of LAN/STV. By virtue of these contracts, DART was in privity with both LAN/STV and GLF, but LAN/STV and GLF were not in privity with each other.

GLF filed suit against LAN/STV. Lacking contractual privity with LAN/STV, GLF asserted tort claims of professional negligence and misrepresentation. GLF's complaint alleged that the plans, drawings, and specifications LAN/STV prepared and provided: (1) were insufficiently detailed to accomplish their purpose; (2) contained an exorbitant number of errors; (3) were inconsistent as to how and when the work was to be performed; and (4) did not accurately reflect existing site conditions. GLF further alleged that these deficiencies were exacerbated by LAN/STV's improper contract administration and supervision.

LAN/STV filed a motion for summary judgment on the ground of derivative sovereign

-2-

immunity. It argued that, as an independent contractor performing DART's functions, it enjoyed the same immunity from GLF's tort claims as DART would enjoy. In support of its motion, LAN/STV presented an order from the same court dismissing, on derivative sovereign immunity grounds, a concurrent action by GLF against LAN/STV. Like this action, that suit was based on a DART expansion project for which LAN/STV prepared the plans and GLF performed the construction. Finding the reasoning of that order persuasive, the district court in this case granted LAN/STV's motion for summary judgment.[2] GLF filed this appeal.

## II

We review *de novo* a grant of summary judgment. *Baton Rouge Oil & Chem. Workers v. ExxonMobil Corp.*, 289 F.3d 373, 376 (5th Cir. 2002). We affirm the judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV.

---

[2] LAN/STV argues that, in light of the prior decision addressing very similar claims between the same parties, the district court's judgment in this case should be affirmed under the doctrine of claim preclusion. Claim preclusion applies where the parties to both actions are identical or in privity, the first judgment was rendered by a court of competent jurisdiction and concluded with a judgment on the merits, the same claim or cause of action is involved in both suits, and all claims or defenses arise from a common nucleus of operative facts. *See Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 664-65 (5th Cir. 1994). LAN/STV did not raise claim preclusion as an affirmative defense as required by FED. R. CIV. P. 8(c). While we may apply the doctrine of claim preclusion even when not properly pled before the district court, *Jackson v. North Bank Towing Corp.*, 213 F.3d 885, 890 (5th Cir. 2000), we decline to do so in this case. We are not satisfied that all of the relevant facts are before us, and are therefore unable to determine whether the elements of claim preclusion are satisfied, particularly with respect to the requirement of a common nucleus of operative facts. *See Energy Dev. Corp. v. St. Martin*, 296 F.3d 356, 363 (5th Cir. 2002) ("Our cases allowing consideration of *res judicata* or collateral estoppel on appeal do so only if 'all of the relevant facts are contained in the record and are uncontroverted.'"); *see also Matter of Braniff Airways*, 783 F.2d 1283, 1289 (5th Cir. 1986) (stating that "[t]he party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention" and that "if reasonable doubt exists as to what was decided in the first action, the doctrine of *res judicata* should not be applied"). LAN/STV has not argued issue preclusion, and we decline to raise it *sua sponte*. *See United Home Rentals, Inc. v. Texas Real Estate Comm'n*, 716 F.2d 324, 331 (5th Cir. 1983) (declining to raise collateral estoppel *sua sponte*).

P. 56(c). We review the district court's interpretation of state law *de novo*. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 987-88 (5th Cir. 1992). When there is no ruling by the state's highest court addressing the legal issue presented, we must determine, as best we can, what the state's highest court would decide. *Id*. at 988.

"DART is a regional transportation authority created under Chapter 452 of the Texas Transportation Code." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 465 (5th Cir. 2004). Under Texas law, where "an independent contractor of [a transportation] entity is performing a function of the entity or of a regional transportation authority . . . , the contractor is liable for damages o nly to the extent that the entity or authority would be liable if the entity or authority itself were performing the function." TEX. REV. CIV. STAT. ANN. art. 6550d (Vernon Supp. 2004-2005). GLF does not dispute that the engineering and supervisory services provided by LAN/STV fall within the ambit of DART's functions as a regional transportation authority. *See* TEX. TRANSP. CODE ANN. § 452.056 (Vernon 1999) (providing that a regional transportation authority may "acquire, construct, develop, plan, own, operate, and maintain a public transportation system in the territory of the authority"). Because LAN/STV was performing a function of DART, it is liable for damages to GLF "only to the extent" that DART would be liable if it had prepared the plans, drawings, and specifications and supervised the Project.

The doctrine of sovereign immunity would bar tort claims of the sort alleged by GLF's, if asserted against DART.[3] GLF could, however, assert claims against DART for breach of contract.

---

[3] Under the doctrine of sovereign immunity, the State and its governmental units are immune from tort liability unless immunity has been waived by the Texas Torts Claim Act. *See Univ. of Texas Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994). The Texas Tort Claims Act waives sovereign immunity only in a limited range of cases, and GLF concedes that none of these circumstances apply to this case. *See* TEX CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005).

*See Beard Family P'ship v. Commerical Indem. Ins. Co.*, 116 S.W.3d 839, 847 (Tex.App.)) Austin, 2003, no pet.) ("An owner breaches its construction contract with its contractor when the inadequacies of the owner's plans, obtained through the owner's retained engineer, cause delay in the completion of the work.") (citing *United States v. Spearin*, 248 U.S. 132, 136 (1918)). GLF argues that, because it would have a cause of action against DART for breach of contract, Article 6550d does not prohibit it from suing LAN/STV in tort. That i s, GLF contends that, as long as the government entity could have been subjected to liability under *some* cause of action, the independent contractor performing a function that entity can be sued under *any* cause of action.

We disagree. Texas law carves out certain exceptions to the general rule that DART, as a government entity, is immune from suit and liability. Through the Texas Tort Claims Act, it permits liability for certain tort claims. *See* TEX CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005). It permits liability for breach of contract through administrative remedies and, where the plaintiffs have exhausted those remedies, through suits for breach of contract. *Martin K. Eby*, 369 F.3d at 469-71. It also limits the maximum amount of liability for certain areas in which it has waived immunity from liability and suit. *See* TEX CIV. PRAC. & REM. CODE ANN. § 101.023 (Vernon 2005) (setting maximum monetary awards under the Texas Torts Claim Act). Texas law thus limits DART's liability both in terms of the causes of action for which DART may be held liable and, for

Thus, sovereign immunity would insulate DART from liability in tort for the actions that form the basis of GLF's complaint against LAN/STV.

GLF has not argued that its claims would be construed other than as tort claims if DART itself had performed the functions at issue. *Compare Martin K. Eby*, 369 F.3d at 472 (holding that "it is clear that Eby's misrepresentation claim, as it is presented here, is a contractual one"); *Cass v. Stephens*, 156 S.W.3d 38, 68 (Tex.App.)) El Paso 2004, pet. filed) ("The law of 'contorts' is a muddy area, devoid of bright line rules or easy answers as to what conduct constitutes a tort, and what a breach of contract. The acts of a party may breach duties in tort or contract alone, or simultaneously in both.").

some claims, the maximum amount of recovery.  Article 6550(d) effectively places LAN/STV, as an independent contractor performing DART's functions, in DART's shoes for purposes of liability. That is, as the language of the statute plainly states, LAN/STV is liable "only to the extent" that the DART itself would be liable had it performed the same function.  TEX. REV. CIV. STAT. ANN. art. 6550d (Vernon Supp. 2004-2005).  Texas law would not permit DART to be held liable in tort on these facts.  Accordingly, neither does Article 6550d permit LAN/STV, performing DART's functions, to be held liable in tort.[4]

GLF argues that this reading of Article 6550d is inconsistent with the language of the statute. Texas law, GLF notes, draws a distinction between immunity from liability and immunity from suit. *See Martin K. Eby*, 369 F.3d at 468 (recognizing that, under Texas law, governmental immunity embraces two principles: immunity from liability and immunity from suit).  Because Article 6550d is framed in terms of whether the transportation entity would be "liable," GLF reasons, the district court necessarily erred by focusing on whether DART could be sued for the same cause of action.

Again, we disagree.  Governmental immunity under Texas law does incorporate two distinguishable principles, immunity from liability and immunity from suit.  It does not follow, however, that by using the word "liable" in Article 6550d, the legislature intended to permit independent contractors to be held liable under any cause of action so long as the government entity

---

[4] Our analysis is not altered by GLF's citation to *City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673 (Tex.App.) ) Corpus Christi 2004, no pet.).  In that case, the court rejected the defendants' contention that, as contractors of a government entity, they were immune from suit. *Id*. at 681-82.  The court noted, however, that the defendants cited no authority for their claim of derivative immunity, and the opinion nowhere addresses Article 6550d. *See Id.*

for whom the contractor was acting could be liable for breach of contract.[5] The distinction between immunity from liability and immunity from suit is simply inapposite to the interpretation of Article 6550d.

GLF also objects that the district court's interpretation of Article 6550d creates immunity for independent contractors regardless of whether the government would be liable, merely because of the fortuity that a different cause of action applies. GLF intimates that the district court's interpretation of Article 6550d gives LAN/STV a windfall. We find this argument unpersuasive. As GLF acknowledges, it can pursue its claims directly against DART through DART's administrative procedures and, after exhausting that remedy, can file suit against DART for breach of contract. *See Martin K. Eby*, 369 F.3d at 471; *Beard Family P'ship*, 116 S.W.3d at 847. Further, there is nothing to indicate that DART would be prevented from pursuing claims against LAN/STV for the alleged deficiencies in the company's performance. Thus, our reading of Article 6550d neither denies GLF a remedy nor immunizes LAN/STV from liability.

For the reasons stated above, we AFFIRM the judgment of the district court.

---

[5] In *Martin K. Eby*, the distinction between immunity from liability and immunity from suit was relevant only because the issue in that case was whether the plaintiff had to exhaust his administrative remedies before filing suit against DART, notwithstanding DART's waiver of immunity from liability. 369 F.3d at 468-71.