Jose CASTRO, Appellant,

v.

Jerry Stevens CAMMERINO, Lori Cammerino, and Chris Cammerino, Appellees.

No. 05–04–01792–CV.

Court of Appeals of Texas, Dallas.

March 7, 2006.

Rehearing Overruled April 7, 2006.

William David Ellerman, Jackson Walker L.L.P., Dallas, for Appellant.

Glenn D. Tucker, Law Office of Glenn Tucker, Dallas, for Appellee.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Jose Castro[1] appeals the trial court's amended final judgment awarding Jerry Stevens Cammerino $2,022,917.41 for injuries she sustained when she was struck by a Dallas Area Rapid Transit (DART) bus driven by Castro. Although Castro wore a DART uniform and drove a DART bus, he was an employee of a DART contractor, First Transit, Inc.

Castro brings four issues on appeal contending the trial court erred when it: (1) it refused to apply the $100,000 statutory damage cap on liability set out in the Texas Tort Claims Act to him and reduce the $2,022,917.41 judgment against him; (2) refused to adjudicate First Transit's claims in intervention, impose liability against First Transit, rather than its employee, Castro, and enter a judgment against First Transit in the amount of $100,000 pursuant to the statutory damage cap; (3) bifurcated and severed First Transit's claims in intervention from the Cammerinos' claims against him; and (4) admitted into evidence graphic photographs of Ms. Cammerino's injuries.

After reviewing Castro's claims, we conclude the trial court did not err when it refused to apply the statutory damage cap set out in the Texas Tort Claims Act to Castro's liability or when it refused to impose liability against First Transit, instead of against Castro. Also, we conclude the trial court did not err when it admitted into evidence the graphic photographs of Ms. Cammerino's injuries. The trial

court's amended final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

First Transit contracted with DART to provide public transportation. Castro was employed by First Transit to operate a bus pursuant to its contract with DART. Although an employee of First Transit, Castro drove a DART bus and wore a DART uniform.

On June 28, 2002, Ms. Cammerino, who was sixty-seven years old, was walking to the bus stop on her way home from work. When she reached the intersection of North Central Expressway and Main Street, she stopped at the corner, waited for the light to turn green, and looked both ways before crossing. As she was walking in the crosswalk, she was struck and dragged by a DART bus making a right turn. Castro was the driver of the DART bus. A police officer saw the accident, jumped out of his patrol car, and ran down the middle of the street with his arms raised, saying "Stop. Stop." When the DART bus stopped, the front passenger-side wheel was directly on top of Ms. Cammerino's right foot and leg. The police officer told Castro to back up the DART bus, but instead he turned the wheel, grinding Ms. Cammerino's foot and leg. Another DART bus driver got on the DART bus with Castro and helped him back the bus off of Ms. Cammerino's leg.

An ambulance arrived and took Ms. Cammerino to the hospital. At the hospital, Ms. Cammerino's right leg was amputated because it had been severely crushed and mangled. Also, she had a complex fracture of the elbow and other cuts and bruises.

1. The record shows Castro testified his name is "Jose Antonio Castro Hernandez."

Ms. Cammerino sued Castro and First Transit alleging negligence, negligent entrustment, and negligence per se, and seeking economic, non-economic, and punitive damages. Her children, Lori and Chris Cammerino, sued First Transit and Castro for loss of parental consortium. First Transit and Castro filed a joint motion for summary judgment that asserted the application of the Texas Tort Claims Act statutory damage cap because First Transit was an independent contractor of DART. The Cammerinos nonsuited First Transit and continued with their negligence claims against Castro.

First Transit intervened in the lawsuit seeking a declaratory judgment to determine the rights of First Transit and Castro under the Texas Tort Claims Act. The trial court allowed the intervention over the Cammerinos' objection but bifurcated First Transit's claims in intervention from the Cammerinos' claims against Castro. Accordingly, the case proceeded to trial only on the Cammerinos' claims against Castro.

Before trial, the parties stipulated that, when the DART bus struck Ms. Cammerino, "Castro was performing his duties as an employee of First Transit in furtherance of First Transit's contract with DART ... [by] providing public transportation pursuant to that contract." At trial, Castro did not contest the nature of Ms. Cammerino's injuries. The jury found Castro liable for negligence, awarded Ms. Cammerino $2,022,917.41 in compensation for her injuries, but the jury did not award Lori or Chris Cammerino damages for loss of parental consortium. Further, the jury found Ms. Cammerino's injuries were not

the result of malice, and punitive damages were not awarded.

Following the jury's verdict, First Transit moved for the entry of a judgment relieving Castro of liability and assessing damages in the amount of $100,000 against First Transit. The trial court denied First Transit's motion. Then, the trial court granted the Cammerinos' motion to sever First Transit's intervention.[2] Castro filed a motion for new trial urging the trial court to enter a judgment against First Transit applying the Texas Tort Claims Act statutory damage cap or, in the alternative, to apply the statutory damage cap to him and reduce the judgment. The trial court denied Castro's motion for new trial and amended the final judgment to clarify that Lori and Chris Cammerino were not entitled to recover their costs.

## II. TEXAS TORT CLAIMS ACT STATUTORY DAMAGE CAP ON LIABILITY

In issues one through three, Castro argues the trial court erred when it refused to apply the statutory damage cap set out in the Texas Tort Claims Act. These issues require us to interpret the meaning of the Texas Tort Claims Act and related statutes.

### A. Standard of Review

Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). As such, they are subject to de novo review. *See id.*

In construing a statute, a reviewing court should determine and give effect to the legislature's intent. *Nat'l Liab. &*

2. The Court notes that First Transit filed a petition for a writ of mandamus based, in part, on the trial court's severance of its claims. The Court concluded First Transit failed to show the trial court abused its dis-

cretion and denied its petition. *See In re First Transit, Inc.,* No. 05–05–00469–CV, 2005 WL 858943 (Tex.App.-Dallas Apr. 15, 2005, orig. proceeding [mand. denied]).

*Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). It is presumed that in enacting a statute, the legislature intended: (1) compliance with the United States and Texas Constitutions; (2) the entire statute to be effective; (3) a just and reasonable result; (4) a result feasible of execution; and (5) the public interest to be favored over any private interest. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005) (codes); TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005) (civil statutes). It is well settled that statutes in pari materia are to be read and construed together in arriving at the intention of the legislature. *Calvert v. Fort Worth Nat'l Bank,* 163 Tex. 405, 409, 356 S.W.2d 918, 921 (1962); *Sani v. Powell,* 153 S.W.3d 736, 743 (Tex.App.-Dallas 2005, pet. denied). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *see also Nat'l Liab. & Fire Ins. Co.,* 15 S.W.3d at 527; *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998) (orig.proceeding).

### B. Applicability of Liability Cap to Castro

In his first issue, Castro argues the trial court erred when it refused to apply the $100,000 statutory damage cap on liability set out in the Texas Tort Claims Act and, thereby, reduce the $2,022,917.41 judgment against him. Castro claims that: (1) the relevant statutes treat DART and First Transit the same for purposes of liability, so the statutory damage cap should be extended to Castro because he was acting within the scope of his employment when the accident occurred; and (2) the trial court's refusal to apply the statutory damage cap to Castro's liability allows an employee, performing a public service in the scope of his employment, to be held to a greater standard of liability than his employer, an independent contractor with limited liability. The Cammerinos respond that the Texas Transportation Code, by its terms, does not apply the contractor's immunities or DART's immunities to an independent contractor's employees.

### 1. Applicable Law

The Texas Tort Claims Act provides a limited waiver of governmental immunity if certain conditions are met. *See Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004). Section 101.021 of the Texas Tort Claims Act lists the conditions necessary for establishing government liability:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

  (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

  (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005); *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex. 2003). Section 101.001(3) of the Texas Tort Claims Act defines a "governmental unit":

(3) "Governmental unit" means:

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D) (Vernon 2005).

Although the Texas Tort Claims Act provides a limited waiver of governmental immunity, section 101.023 limits the amount of any liability by establishing statutory damage caps for the liability of a governmental unit as follows:

(b) Except as provided by Subsection (c),[3] liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(b) (Vernon 2005) (footnote added). Former section 101.106 of the Texas Tort Claims Act prohibits an action against an employee after a settlement or judgment against the governmental unit:

Sec. 101.106 EMPLOYEES NOT LIABLE AFTER SETTLEMENT OR JUDGMENT.

A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3305 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005)).[4] Section 101.001(2) of the Tex-

---

**3.** Subsection (c) of section 101.023 of the Texas Tort Claims Act states:

(c) Liability of a municipality under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(c).

**4.** The Cammerinos filed their original petition on January 14, 2003. The revisions to section 101.106 of the Texas Tort Claims Act did not become effective until September 1, 2003. The current version of section 101.106 states:

§ 101.106. Election of Remedies

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official ca-

as Tort Claims Act defines an employee as follows:

(2) "Employee" means a person, including an officer or agent, who is in the paid service of the governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2).

The Texas Transportation Code permits an authority to contract out the operation of a public transportation system:

(a) An authority may:

(3) lease all or a part of the public transportation system to, or contract for the operation of all or a part of the public transportation system by, an operator.

TEX. TRANSP. CODE ANN. § 452.056(a)(3) (Vernon 1999). Section 452.001(1) of the Texas Transportation Code defines an "authority":

(1) "Authority" means a regional transportation authority created under this chapter or Chapter 683, Acts of the 66th . Legislature, Regular Session, 1979. The term includes:

(A) when used in Subchapters B,[5] C, D, F, H, and I and Sections 452.201 and 452.451, a subregional authority created by a contiguous municipality; and

(B) as appropriate, an authority, other than an authority created by a contiguous municipality, consisting of one subregion.

TEX. TRANSP. CODE ANN. § 452.001(1) (Vernon Supp.2005) (footnote added). Section 452.052(c) establishes the relationship between an "authority" in the Texas Transportation Code and a "governmental unit" in the Texas Tort Claims Act:

(c) An authority is a governmental unit under Chapter 101, Civil Practice and Remedies Code, and the operations of the authority are not proprietary functions for any purpose including the application of Chapter 101, Civil Practice and Remedies Code.

TEX. TRANSP. CODE ANN. § 452.052(c) (Vernon 1999). DART is a governmental unit and a regional transportation authority. *Stephens v. DART*, 50 S.W.3d 621, 632–33 (Tex.App.-Dallas 2001, pet. denied) (governmental unit); *GLF Constr. Corp. v. LAN/STV*, 414 F.3d 553, 556 (5th Cir.2005) (regional transportation authority).

Section 452.056(d) of the Texas Transportation Code extends the limited liability of an authority to its independent contractors:

A private operator who contracts with an authority under this chapter is not a public entity for purposes of any law of this state except that an independent contractor of the authority that, on or after June 14, 1989, performs a function of the authority or an entity under Title 112, Revised Civil Statutes, that is created to provide transportation services is liable for damages only to the extent that the authority or entity would be

pacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005).

5. Subchapter B of the Texas Transportation Code is titled "Powers of Authorities" and contains sections 452.051–452.066.

liable if the authority or entity itself were performing the function and only for a cause of action that accrues on or after that date.

TEX. TRANSP. CODE ANN. § 452.056(d) (Vernon 1999) (footnote omitted). Similarly, article 6550d of the Texas Revised Civil Statutes extends a regional transportation authority's limited liability to an independent contractor performing its functions:

> [I]f an independent contractor of the entity is performing a function of the entity or of a regional transportation authority operating under Chapter 452, Transportation Code, the contractor is liable for damages only to the extent that the entity or authority would be liable if the entity or authority itself were performing the function.

TEX.REV.CIV. STAT. ANN. art. 6550d (Vernon Supp.2005).

### 2. Application of Law to Facts

■ First, we address Castro's contention that since the relevant statutes treat DART and First Transit the same for purposes of liability, we should extend the statutory damage cap to Castro because he was acting within the scope of his employment when the accident occurred. Castro compounds that argument with the proposition that the trial court's refusal to apply the statutory damage cap to his liability creates a "loophole that will eviscerate" the Texas Tort Claims Act. We cannot agree with Castro's interpretation of the statutes or the result he suggests.

■ The Texas Tort Claims Act provides a statutory damage cap which applies to a governmental unit. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(b). The independent contractor of a governmental unit is expressly entitled to the protection of the statutory damage cap pursuant to section 452.056(d) of the Texas Transportation Code and article 6550d of the Texas Revised Civil Statutes. These "caps" or limitations on liability are not transmitted to the "employees" of the governmental unit or the "employees" of the independent contractor. However, some protection from liability is afforded to the employees of governmental units. Former section 101.106 of the Texas Tort Claims Act, applicable to this case, can effect a bar of an action against a governmental unit's employee for his acts giving rise to the claim, but only in the following instance: "A judgment in an action or a settlement of a claim under this chapter *bars any action involving the same subject matter* by the claimant against the *employee of the governmental unit* whose act or omission gave rise to the claim." *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, 1985 Tex. Gen. Laws at 3305 (amended 2003) (emphasis added).[6] Pivotal in this case is that the employees of independent contractors are not included in former section 101.106, and they are specifically excluded from the definition of an "employee" under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2). Accordingly, the statutory framework providing the "damage caps" and the "bar" does not include the employees of independent contractors of governmental units. The Texas Legislature could have included language in section 452.056(d) of the Texas Transportation Code, article 6550d of the Texas Revised Civil States, or some other provision of the Texas Tort Claims Act to extend the "bar" under former section 101.106 or the statutory damage cap to the

---

6. Although claims may be made against employees of governmental units without suit having been brought first against the governmental unit, we do not address those instances here. *See Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 422–23 (Tex.2004); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994).

employees of an independent contractor of a regional transportation authority. It did not do so. There is no "loophole," nor is the Texas Tort Claims Act mechanism "eviscerated." We will not stray from the plain language of the statutes, nor insert meaning where there are no words to support such meaning.

Castro cites us to the recent Fifth Circuit Court of Appeals decision in *GLF* to support his argument that he is entitled to protection from the statutory damage cap. *See GLF*, 414 F.3d 553. Castro contends that because the Fifth Circuit concluded in *GLF* that article 6550d of the Texas Revised Civil Statutes effectively places an independent contractor performing DART's functions in DART's shoes, for purposes of liability, and the Texas Transportation Code effectively places First Transit in DART's shoes, for purposes of liability, First Transit's employees should likewise fit into those same shoes of limited liability.

We cannot agree that *GLF* addresses or can be interpreted to address the liability of an independent contractor's employees. In *GLF*, the Fifth Circuit focused on the specific question of whether LAN/STV, a contractor of DART, which prepared certain plans, drawings, and specifications for construction of extensions to the light rail system, and supervised the construction, could be subject to liability for claims of professional negligence and misrepresentations by GLF, a building contractor on the project. *See id.* The Fifth Circuit concluded that article 6550d of the Texas Revised Civil Statutes, by its specific language, limited LAN/STV's liability "only to the extent" DART would be liable. *Id.* at 557. Nowhere in the opinion does the Fifth Circuit address "employee" liability.

Second, we address Castro's proposition that the trial court's refusal to apply the statutory damage cap to his liability causes

an employee, performing a public service in the scope of his employment, to be held to a greater standard of liability than his employer, an independent contractor with limited liability. Castro relies on *Davis v. Mathis*, 846 S.W.2d 84 (Tex.App.-Dallas 1992, no writ), and the doctrine of respondeat superior to support this claim. However, once again, we disagree with Castro's contention.

In *Davis*, this Court addressed the requirement that a claimant give notice of his claim under the Texas Tort Claims Act to the governmental unit, DART, before filing suit. *See id.* We concluded that because no notice of the claim was given to DART, the plaintiff could not proceed separately against the employee to whom the bar under section 101.106 of the Texas Tort Claims Act applied. *See id.* at 88–89. However, *Davis* does not support Castro's position, and there can be no reasonable extension of that decision to the issues in this case. As we concluded above, under the Texas Tort Claims Act and the related provisions in section 452.056(d) of the Texas Transportation Code and article 6550d of the Texas Revised Civil Statutes, Castro is not in the same position as a DART "employee." The Texas Legislature expressly excluded the employees of an independent contractor when it stated the definition of an employee, "does not include ... an agent or employee of an independent contractor." *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2). Castro's position that he will be held to a greater degree of liability than his independent contractor employer is an argument best made to the legislature.

■ Finally, we cannot agree that the doctrine of respondeat superior requires Castro's liability to be limited to the statutory damage cap. Respondeat superior is a doctrine typically used offensively by a party asserting a claim against an employ-

er for an employee's wrongful acts. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998) (under respondeat superior, employer is vicariously liable for negligence of employee acting within scope of employment, even though employer has not committed wrong). Castro offers no authority to support this novel, reverse-flowing application of the doctrine of respondeat superior as a conduit for the transfer of an independent contractor's limited liability to its employee.

We conclude the trial court did not err when it refused to apply the $100,000 statutory damage cap set out in the Texas Tort Claims Act and, thereby, reduce the $2,022,917.14 judgment against Castro. Accordingly, Castro's first issue is decided against him.

### C. Imposition of Judgment and Liability Cap on First Transit

In his second issue, Castro argues the trial court erred when it refused to adjudicate First Transit's claims in intervention and enter a judgment against First Transit, instead of Castro, in the amount of $100,000. According to Castro, if the trial court had entered a judgment against First Transit in the amount of $100,000, he would not be liable for damages to the Cammerinos. Then, in his third issue, Castro argues the trial court erred when it bifurcated and severed First Transit's claims in intervention from the Cammerinos' claims against him. He contends that if the trial court permitted First Transit to participate in the trial, First Transit's liability would have been adjudicated and Castro would have been entitled to the statutory bar of former section 101.106 preventing an action against the employee of a governmental unit.

In our analysis of Castro's first issue, we determined the statutory damage cap does not extend to Castro as an employee of an independent contractor of transportation services. We need not directly analyze Castro's second and third issues because they raise propositions which are based on the reasoning offered by Castro in his first issue. Even if First Transit had been held liable and the $100,000 statutory damage cap applied to it, the relevant statutes, discussed above, do not provide a cap or bar applicable to Castro. Accordingly, Castro's second and third issues are decided against him.

### III. ADMISSIBILITY OF PHOTOGRAPHS

In his fourth issue, Castro argues the trial court erred when it admitted into evidence graphic photographs of Ms. Cammerino's injuries because they are not relevant and their probative value is greatly outweighed by the danger of unfair prejudice. Castro argues he did not dispute the horrific nature of Ms. Cammerino's injuries. Also, he argues the photographs were not probative of liability, causation, damages, or any other disputed issue. The Cammerinos respond that: (1) the photographs were relevant to show Ms. Cammerino was in the crosswalk when she was hit by the bus and the damages she incurred; (2) although Castro did not contest the horrific nature of Ms. Cammerino's injuries, he did not stipulate to the value of her damages; and (3) testimony regarding the matters depicted in the photographs would be admissible.

### A. Standard of Review

A trial court's decision to admit evidence is committed to its sound discretion. *See Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 772 (Tex.App.-Corpus Christi 1999, pet. denied). An appellate court will

not reverse a trial court's decision to admit or exclude a relevant photograph absent a showing of an abuse of discretion. *See Huckaby v. A.G. Perry & Son, Inc.,* 20 S.W.3d 194, 209 (Tex.App.-Texarkana 2000, pet. denied); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 671 (Tex.App.-Texarkana 1991, writ denied).

### B. Applicable Law

■■■ To be admissible, photographs must illustrate disputed fact issues and portray facts relevant to an issue. *Heddin v. Delhi Gas Pipeline Co.,* 522 S.W.2d 886, 889–90 (Tex.1975); *Fibreboard,* 813 S.W.2d at 671. Relevant evidence is any "evidence having any tendency to make the existence of any fact more or less probable than it would be without the evidence." Tex.R. Evid. 401. As a general rule, photographs relevant to any issue in the case are admissible. *Huckaby,* 20 S.W.3d at 209; *Fibreboard,* 813 S.W.2d at 671.

■■■ Photographs that are merely calculated to arouse the sympathy, prejudice, or passion of the jury and do not serve to illustrate disputed issues or aid the jury in its understanding of the case should not be admitted. *Heddin,* 522 S.W.2d at 890. However, to be excluded, evidence must not only create a danger of unfair prejudice, but that danger must substantially outweigh its relevance. *See* Tex.R. Evid. 403; *Pittsburgh,* 1 S.W.3d at 772. Relevant evidence will not be excluded simply because it would create prejudice. *See* Tex.R. Evid. 403; *Huckaby,* 20 S.W.3d at 209; *Pittsburgh,* 1 S.W.3d at 772; *Fibreboard,* 813 S.W.2d at 671. Instead, there must be a demonstration that the introduction of the evidence would be *unfairly* prejudicial to the objecting party. *See* Tex.R. Evid. 403; *Pittsburgh,* 1 S.W.3d at 772. The fact that photographs are gruesome does not render them inadmissible. *Huckaby,* 20 S.W.3d at 209; *Fibre-*

*board,* 813 S.W.2d at 671. Even when a defendant stipulates to actual and gross negligence, photographs depicting a person's injuries can help the jury to assess the full extent of the impact of the defendant's conduct. *See Castro v. Sebesta,* 808 S.W.2d 189, 193 (Tex.App.-Houston [1st Dist.] 1991, no writ).

■■■ Even when there has been a proper objection to photographs, the objecting party waives any error in the admission of the photographs when he does not object to testimony that graphically describes the same conditions depicted in the photographs. *See Trailways, Inc. v. Clark,* 794 S.W.2d 479, 488 (Tex.App.-Corpus Christi 1990, writ denied).

### C. Application of the Law to the Facts

■■■ Castro complains the trial court erred when it admitted four photographs. Two of the photographs depict the front passenger-side of the DART bus in the crosswalk with blood and tissue in the crosswalk, and one of the photographs depicts the blood and tissue on the road. These three photographs are taken from different angles and distances. The fourth photograph appears to have been taken at the hospital and depicts Ms. Cammerino's crushed and mangled right leg before amputation. The trial court excluded additional photographs of the injuries to Ms. Cammerino's leg as cumulative evidence of her injuries.

Even though Castro objected to the admission of the photographs, any error was waived by the testimony of the conditions depicted in those photographs. *See Trailways,* 794 S.W.2d at 488. At trial, witnesses testified they saw Ms. Cammerino in the crosswalk when she was struck and dragged by the DART bus. Also, the orthopedic trauma surgeon who treated Ms. Cammerino when she arrived at the hospital and amputated her leg testified,

without objection, about the nature and extent of her injuries.

■ However, even if Castro's objection was not waived by the introduction of testimony describing the conditions depicted in the photographs, the photographs were relevant and admissible as evidence of Castro's liability and Ms. Cammerino's physical pain and suffering. At trial, Castro contested liability and took the position that Ms. Cammerino did not look properly before entering and while walking in the crosswalk. The three photographs depicting the DART bus, the crosswalk, and the blood and tissue in the crosswalk show Ms. Cammerino was in the crosswalk and how far she had entered into the intersection when she was struck and dragged by the DART bus. Also, Castro contested the issue of damages. Although gruesome, the photograph of Ms. Cammerino's injured leg showed the extent of Ms. Cammerino's injuries.

Accordingly, we conclude the trial court did not err when it admitted into evidence graphic photographs of Ms. Cammerino's injuries. Castro's fourth issue is decided against him.

## IV. CONCLUSION

The trial court did not err when it refused to apply the statutory damage cap set out in the Texas Tort Claims Act. Also, the trial court did not err when it admitted the photographs of Ms. Cammerino's injuries.

The trial court's amended final judgment is affirmed.