**JOHN A. BRODERICK, INC. d/b/a Worldbridge Partners, Appellant,**

v.

**KAYE BASSMAN INTERNATIONAL CORP., Appellee.**

No. 05–09–00692–CV.

Court of Appeals of Texas, Dallas.

Jan. 6, 2011.

Rehearing Overruled March 21, 2011.

Joe Chumlea, Shakelford, Melton & McKinley L.L.P., Dallas, TX, for Appellant.

Michael K. Hurst, Vanessa Jean Rush, Gruber Hurst Johansen & Hail LLP, Jason A. Copling, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for Appellee.

Before Justices O'NEILL, LANG, and MURPHY.

## OPINION

Opinion By Justice LANG.

This case involves a bill of review filed by Kaye Bassman International Corp. ("KBIC") to challenge a default judgment against KBIC in favor of John A. Broderick, Inc. d/b/a Worldbridge Partners ("Worldbridge"). The trial court granted summary judgment in favor of Worldbridge and awarded Worldbridge attorney's fees calculated based on a finding the parties had reached a valid rule 11 settlement. *See* Tex.R. Civ. P. 11. Both parties appeal the trial court's judgment.

In two issues, Worldbridge challenges the trial court's judgment on the alleged rule 11 agreement and its related rulings on attorney's fees. In its cross-appeal, KBIC argues the trial court applied the wrong standard in its summary judgment ruling on the bill of review proceeding because a different standard applies in "circumstances where service papers are misplaced." As an alternative, KBIC asserts the trial court properly enforced the parties' high-low rule 11 agreement, but

erred in determining Worldbridge had proven reasonable and necessary attorney's fees of $36,538 as a matter of law as to pre-June 30, 2008 attorney's fees. KBIC also asserts the attorney's fees were unreasonable as a matter of law in light of the award of only $19,500 in damages.

We reverse the trial court's judgment as to the rule 11 agreement, render judgment as to the $36,538 attorney's fees finding, and remand for further proceedings as to post-June 30, 2008 attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Worldbridge and KBIC are both employee recruiting firms. On January 19, 2007, Worldbridge filed suit against KBIC seeking $19,500 in damages pursuant to an alleged breach of a referral agreement between the two parties. After KBIC failed to answer, the trial court rendered an "Order of Final Judgment by Default" (the "default judgment") awarding Worldbridge $23,760.23, which included $19,500 in contract damages and $3,500 in attorney's fees.[1] KBIC thereafter filed this bill of review proceeding challenging the default judgment. Worldbridge filed an answer and general denial[2] asserting, *inter alia,* a claim for attorney's fees pursuant to Texas Civil Practice and Remedies Code section 38.001 because the underlying judgment was based on a breach of contract. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (West 2008).

Both parties filed motions for traditional summary judgment, *see* Tex.R. Civ. P. 166a(c), yet each relied on a different stan-

---

1. The trial court also awarded Worldbridge costs, pre-judgment interest, and potential appellate attorney's fees of up to $11,000.

2. Additionally, a "First Supplemental Original Answer" was filed by Worldbridge on March 12, 2008, in which Worldbridge asserted several affirmative defenses not relevant to this appeal.

dard for the bill of review proceeding. Relying primarily on *Fidelity & Guaranty Insurance Co. v. Drewery Construction Co., Inc.*, 186 S.W.3d 571 (Tex.2006), KBIC asserted, in part, it was entitled to summary judgment because its failure to answer was due to the misplacement of service papers and it had conclusively satisfied the three requirements stated in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939): (1) its default was neither intentional nor the result of conscious indifference, but was due to mistake or accident, (2) it had a meritorious defense, and (3) a new trial would cause neither delay nor undue prejudice. Worldbridge, relying primarily on *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 998 (1950), contended KBIC had failed to establish the requirements of (1) a prima facie meritorious defense to the underlying action, (2) which it was prevented from making by the fraud, accident, or wrongful act of Worldbridge, (3) unmixed with any fault or negligence on KBIC's part. KBIC appealed an associate judge's decision granting Worldbridge's motion and denying its motion, which the trial court later affirmed.

### Attorney's Fees Record

On April 25, 2008, following the summary judgment hearing before the associate judge, but prior to the judge's ruling, Worldbridge had filed a motion for attorney's fees supported by an affidavit of an associate attorney representing Worldbridge. Thereafter, on July 11, 2008, Worldbridge filed another affidavit by Worldbridge's lead attorney in which counsel testified the "reasonable and customary" fees for legal work through June 30, 2008 would be "at least $36,538.00." In addition, Worldbridge filed an August 8, 2008 supplemental affidavit in which counsel stated the July 11 affidavit "superceded and replaced" the April 25 affidavit.

On August 12, 2008, KBIC filed an objection to and motion to continue the hearing on Worldbridge's motion for attorney's fees. KBIC asserted, in relevant part, that Worldbridge's affidavits were facially inconsistent and showed a "gross disparity" in the number of hours billed by the associate attorney. Worldbridge's attorney's fees request was thereafter heard by the trial court on March 25, 2009, after the trial court affirmed the associate judge's decision granting summary judgment.[3] At that proceeding, Worldbridge argued, *inter alia*, it had proved attorney's fees of "$36,500" through June 30, 2008 as a matter of law based on the July 11 and August 8 affidavits because KBIC had not filed a controverting affidavit. Worldbridge also represented it was prepared to present evidence of additional attorney's fees from July 1, 2008, through the date of the hearing.

### Rule 11 Agreement

On the morning of April 29, 2008, after the associate judge had heard Worldbridge's summary judgment motion, but prior to any hearing on attorney's fees, counsel for the parties exchanged emails

---

3. Although it is not clear from the record when the parties' motions for summary judgment were ruled upon by the trial judge, counsel for Worldbridge stated at the start of the March 25, 2009 proceeding, "And now the summary judgments have been decided. They were argued once and then argued again last summer and now signed today, so all we're here for is just attorney's fees. That's all it is for the prevailing party, which is Worldbridge at this stage." The record does not contain any order granting or denying either of the motions for summary judgment.

regarding their clients' "agreement" to what they referred to as "the new bookend range of $15,000 to $30,000" (the "email exchange"). Later that same day, the parties filed an agreed motion for continuance of the attorney's fees hearing, in which they stated they had "agreed to engage in further settlement negotiations." Several months later, as part of KBIC's August 12 objection to Worldbridge's attorney's fees, KBIC sought a continuance based in part on "the parties' agreed bookends on settlement discussions." The record contains no further pretrial references to the settlement discussions.

Almost a year after the email exchange, at the March 2009 hearing on Worldbridge's request for attorney's fees, the trial court took judicial notice of the email exchange, which KBIC had filed several hours earlier and which was designated as "Exhibit Number 1." KBIC contended the email exchange constituted a "high/low" settlement agreement that was enforceable in accordance with rule 11 of the Texas Rules of Civil Procedure and had the effect of limiting KBIC's "exposure" to a maximum of $30,000. Worldbridge moved to strike the email exchange, arguing it was not "in good faith" and was not an enforceable rule 11 agreement. Following the parties' presentation of evidence, which they agree constituted a trial by consent, the trial court ruled the email exchange was unambiguous and constituted an enforceable rule 11 agreement.

### Judgment

As a result of its ruling on the rule 11 agreement, the trial court rendered judgment for Worldbridge, but refused Worldbridge's request to submit evidence of post-June 30 attorney's fees. The trial court then applied its interpretation of the rule 11 "high/low" agreement to the prior default judgment, as affirmed by its summary judgment ruling, and rendered a final judgment in favor of Worldbridge in the amount of $6,239.77.

### Findings of Fact and Conclusions of Law

Following the March 29, 2009 judgment, the trial court signed findings of fact and conclusions of law that included, in relevant part, the following:

#### I. Findings of Fact

. . . .

2. The Court previously granted Worldbridge's Motion for Summary Judgment on KBIC's bill of review; therefore, the sole issue at the hearing on March 25, 2009 was: what, if any, attorney's fees should be awarded to [Worldbridge] in defending the bill of review?

3. In an April 29, 2008 email, counsel for KBIC and Worldbridge entered into a "high/low" Rule 11 Agreement, that the parties would resolve their dispute for no less than $15,000 and no more than $30,000 ("the Rule 11 Agreement").

. . . .

13. The Rule 11 Agreement is not ambiguous on its face.

. . . .

15. Prior to the hearing, Worldbridge submitted several affidavits in support of its request for attorney's fees. During the hearing the Court took judicial notice of the contents of the Court's jacket, including the Rule 11 Agreement filed by KBIC's counsel, and the following affidavits filed by Worldbridge's counsel:

a. The April 25, 2008 Affidavit of [Worldbridge's associate attorney] states, in relevant part, as follows:

i) [Worldbridge's associate attorney] spent 54.6 hours on the case between January 2008 and April 25, 2008; [and]

ii) $22,632.50 is a reasonable and necessary attorney's fee for representing Worldbridge from inception of the bill of review (in September 2007) through April 25, 2008[.]

. . . .

b. The July 11, 2008 Affidavit of [Worldbridge's lead counsel] included an itemized billing statement for Worldbridge's counsel. [The July 11 affidavit] and the supporting billing records contradict [the April 25 affidavit] as follows:

i) the billing records reflect 116 hours for [Worldbridge's associate attorney] from January 2008 through April 25, 2008, 61.4 hours more than what is stated in [the April 25 affidavit]; and

ii) an increase of $13,905.50 in Worldbridge's request for attorney's fees from $22,632.50 to $36,538, of which $11,359 is for the additional 61.4 hours billed under [Worldbridge's associate attorney].

. . . .

16. There are discrepancies in the affidavits submitted by Worldbridge's counsel . . . in support of its request for attorney's fees.

17. After the Court ruled that there is a valid Rule 11 Agreement (see Conclusions of Law below), no further testimony was allowed regarding Worldbridge's attorney's fees, except as was necessary to make [an offer of proof].

. . . .

24. A reasonable and necessary attorney's fee for Worldbridge to recover against KBIC is $6,239.77 for services rendered. (*See* Final Judgment on Petitioner's Bill of Review Claim signed on March 25, 2009).

## II.   Conclusions of Law

1. The sum of $36,538 is a reasonable and customary attorney's fee for the work done by Worldbridge's counsel from September 2007 through June 30, 2008.

2. The April 29, 2008 email between counsel for Worldbridge and KBIC is a valid and enforceable Rule 11 Agreement.

. . . .

4. The Rule 11 agreement is unambiguous.

5. As a consequence of the Rule 11 Agreement, the total judgment in this case will only be $30,000—the "high" end of the parties' "high/low" Rule 11 Agreement.

6. The reasonable and necessary attorney's fees award is $6,239.77, which is calculated by subtracting the total amount of the underlying default judgment from $30,000. (*See* Final Judgment on Petitioner's Bill of Review Claim signed on March 25, 2009).

(citations to reporter's record omitted). Both parties filed timely notices of appeal.

## II.   DENIAL OF KBIC'S BILL OF REVIEW

In its first cross-issue, KBIC challenges the trial court's rulings on the summary judgment motions, asserting the three-

prong *Craddock* standard allowed by the Texas Supreme Court in its 2006 *Fidelity* decision is the proper standard for a bill of review proceeding where service papers have been lost or misplaced. Worldbridge contends the Texas Supreme Court's *Alexander* decision still controls bill of review proceedings, regardless of whether service papers have been lost or misplaced by a party. Under that standard, Worldbridge contends KBIC failed to meet two prongs of the requirements—its default was without any fault or negligence, and it was prevented from making a meritorious defense by the fraud, accident, or mistake of Worldbridge.

### A. Standard of Review

A party moving for traditional summary judgment under rule of civil procedure 166a(c) is charged with the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 864–65 (Tex.App.-Dallas 2009, pet. denied). If the movant discharges its burden, the burden shifts to the nonmovant to present to the trial court any issues that would preclude summary judgment. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied). "When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law; neither party can prevail because of the other's failure to discharge its burden." *Id.* We review a traditional summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dallas Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 929 (Tex.App.-Dallas 2010, no pet.).

### B. Applicable Law

■ A bill of review is an independent action to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 926–27 (Tex.1999) (citing *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex.1998)); *see also* TEX.R. CIV. P. 329b(f) (on expiration of time within which trial court has plenary power, "a judgment cannot be set aside by the trial court except by bill of review for sufficient cause"). Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review. *Wembley Inv. Co.*, 11 S.W.3d at 927 (citing *Alexander*, 226 S.W.2d at 998). Under the *Alexander* standard, before a litigant can successfully invoke a bill of review to set aside a final judgment, "he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident, or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own." *Alexander*, 226 S.W.2d at 998.

In *Craddock*, which involved a direct appeal of the trial court's order denying a defendant's timely motion for new trial, the supreme court stated the following rule: "A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *Craddock*, 133 S.W.2d at 126.

### C. Analysis

#### 1. Determination of Applicable Standard

KBIC acknowledges in its brief on appeal that "Texas appellate courts have historically recited that bill of review plaintiffs must 'ordinarily' prove three elements traceable to [*Alexander*]." However, KBIC contends the Texas Supreme Court's per curiam opinion in *Fidelity* changed that standard for cases "where service papers are lost or misplaced." We cannot agree.

*Fidelity* involved a suit on a surety bond in which the plaintiff, a subcontractor, obtained a default judgment against the surety for the general contractor. *Fidelity*, 186 S.W.3d at 573. The surety filed a motion for new trial in which it explained the service papers had been lost. *Id.* Rejecting the surety's challenge to omission of its correct name in the citation, the court noted the record for a direct attack of a default judgment is not limited to the face of the record and may include "affidavits, depositions, testimony, and exhibits to explain what happened." The court added the following language, on which KBIC relies here:

> That being the case, these procedures focus on what has always been and always should be the critical question in any default judgment: "Why did the defendant not appear?"

> If the answer to this critical question is "Because I didn't get the suit papers," the default generally must be set aside. Exceptions to this rule exist when nonreceipt is uncorroborated, or was a bill-of-review claimant's own fault.

> But if the answer to the critical question is "I got the suit papers but then?," the default judgment should be set aside

only if the defendant proves the three familiar *Craddock* elements.

*Id.* at 574 (citations and footnote omitted). The court concluded that because the surety's failure to answer had nothing to do with the partial omission of its name in the suit papers, such omission provided no ground for setting aside the default judgment by motion for new trial. *Id.* Addressing the *Craddock* factor that "the default was the result of accident or mistake," the court focused on a number of cases where suit papers had been misplaced and no one knew precisely how. *Id.*

KBIC asserts its construction of *Fidelity* to apply to this appeal is further supported by *Cary v. Alford*, 203 S.W.3d 837 (Tex.2006), another per curiam opinion in which the supreme court, citing *Fidelity*, stated it "recently clarified the standard of review when service papers are lost." Worldbridge correctly notes that neither *Craddock* nor *Fidelity* was a bill of review case. Rather, each involved a direct appeal following a default judgment and denial of a motion for new trial. *See Fidelity*, 186 S.W.3d at 573; *Craddock*, 133 S.W.2d at 126. Further, while *Cary* did involve an underlying bill of review, that case was a "combined bill-of-review and medical-malpractice appeal" in which the issue was "whether the defendant's affidavit was sufficient to establish that his failure to answer was an accident rather than conscious indifference." *Cary*, 203 S.W.3d at 837. Nowhere in its three-paragraph opinion in *Cary* does the supreme court clarify how *Fidelity* applies. *Id.*

On remand in *Cary*, the Twelfth Court of Appeals repeated that *Alexander* remains the proper standard and concluded the *Craddock* standard should be applied there because, similar to the facts in

*Hanks v. Rosser,* 378 S.W.2d 31, 34–35 (Tex.1964), there was a failure by the district clerk to give the bill of review plaintiff notice of the default and final judgments, which constituted misinformation. *Alford v. Cary,* No. 12–04–00314–CV, 2007 WL 60765, at *3 (Tex.App.-Tyler Jan. 10, 2007, pet. denied). "Misinformation" by a clerk is an exception to the extended requirements of *Alexander. See Hanks,* 378 S.W.2d at 35. We therefore conclude *Alexander* remains the standard in bill of review cases and was not changed by caveat in the supreme court's per curiam *Cary* decision.

2. Application of *Alexander* Standard

■ Under the *Alexander* standard, KBIC does not allege, and there is no evidence in the record to show, KBIC was prevented from making a meritorious defense to the underlying cause of action by the fraud, accident, or wrongful act of Worldbridge. Hence, the second element in *Alexander* has not been met. Further, in an uncontroverted affidavit, the KBIC employee on whom papers were served in this case stated, "In the midst of a busy day, and while attempting to adjust to temporary job functions that I do not ordinarily perform, I inadvertently neglected to forward the service of citation to KBIC's executives and attorneys." This evidence negates the third *Alexander* element that the default was without fault of KBIC. *See Mackay v. Charles W. Sexton Co.,* 469 S.W.2d 441, 444–45 (Tex.Civ.App.-Dallas 1971, no writ) ("negligence or oversight" of employee of bill of review plaintiff precluded bill of review plaintiff from meeting third element of *Alexander* standard). Therefore, we conclude the trial court did not err by granting summary judgment in favor of Worldbridge or by denying KBIC's motion. We decide against KBIC on its first cross-issue.

## III. AWARD OF ATTORNEY'S FEES

Next, we address the parties' issues on Worldbridge's attorney's fees, which include the trial court's judgment enforcing the alleged rule 11 agreement. Both parties focus on the trial court's findings of fact and conclusions of law.

### A. Standard of Review

We review conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Findings of fact in a case tried to a court are of the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Kahn v. Imperial Airport, L.P.,* 308 S.W.3d 432, 436–37 (Tex.App.-Dallas 2010, no pet). When, as here, we have a complete reporter's record, the trial court's fact findings are not conclusive and are subject to challenge on evidentiary sufficiency grounds. *See BMC Software Belg.,* 83 S.W.3d at 795; *Ahrens & DeAngeli, P.L.L.C v. Flinn,* 318 S.W.3d 474, 479 (Tex.App.-Dallas 2010, no pet.). When an appellant attacks the legal sufficiency of an adverse finding for which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Such a challenge fails if there is more than a scintilla of evidence to support the finding. *Ahrens & DeAngeli, P.L.L.C.,* 318 S.W.3d at 479 (citing *BMC Software Belg.,* 83 S.W.3d at 795). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See, e.g., Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). When a party challenges the legal sufficiency of an adverse finding on an

issue on which it had the burden of proof, it must demonstrate the evidence conclusively established all vital facts in support of the issue. *See McCord v. Goode,* 308 S.W.3d 409, 413 (Tex.App.-Dallas 2010, no pet.) (citing *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001)). We first examine the record for evidence supporting the finding. *Id.* If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* In conducting a factual sufficiency review, we may set aside a trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Ahrens & DeAngeli, P.L.L.C.,* 318 S.W.3d at 479.

### B. Analysis

#### 1. Existence of Rule 11 Agreement

■ We begin with the portion of Worldbridge's first issue in which it asserts the trial court erred "by factually and legally determining that the email exchange was an enforceable 'high-low' settlement agreement under Rule 11, Texas Rules of Civil Procedure." Worldbridge contends it was KBIC's burden to prove the existence of an "enforceable written high-low agreement" and the essential elements are missing from the email exchange—there is no clear agreement to settle, no promise by KBIC to pay a minimum amount and no promise by Worldbridge to accept a maximum amount, and no mutual promise for the high-low amounts to apply regardless of the outcome of the trial. Worldbridge challenges, in relevant part, the trial court's finding of fact number three and conclusion of law number two.

KBIC argues in support of its second cross-issue that the trial court's finding was both legally and factually sufficient, the literal text states the parties' agreement to a range of $15,000 to $30,000, a broad interpretation of the language would include that range "under any circumstances, without or without trial," and it is "obvious and inescapable" KBIC is the one who pays and Worldbridge is the one to receive payment.

The email exchange stated, in relevant part, as follows:

[COUNSEL FOR WORLDBRIDGE]: I've got another issue to deal with in the short term. I will forward you the motion for continuance hopefully, by 11:30 ish.

[COUNSEL FOR KBIC]: Okay, but I really need to hear about the bookends.

[COUNSEL FOR WORLDBRIDGE]: As for the status of our client's agreement to the new bookend range of $15,000 to $30,000 that [was] discussed yesterday afternoon, we presume your client has agreed to the range of $15,000 to $30,000, and if your client has so agreed, our client will also agree to the new bookend range.

[COUNSEL FOR KBIC]: ... I have been able to get [KBIC] to agree as well. Let's discuss where to go from here. Thanks much[.]

■ Rule 11 of the Texas Rules of Civil Procedure states, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." *See* Tex.R. Civ. P. 11. A settlement agreement must comply with rule 11 to be enforce-

able. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex.1995) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984)); *see also London Mkt. Cos. v. Schattman*, 811 S.W.2d 550, 552 (Tex.1991) (once existence of agreement concerning pending suit becomes disputed, alleged agreement is unenforceable unless it comports with rule 11 requirements). In determining whether the "in writing" provision of rule 11 has been satisfied, we apply the same contract principles used to determine whether a writing satisfies the statute of frauds. *Padilla*, 907 S.W.2d at 460. Thus, a rule 11 settlement agreement is not enforceable unless there is a "written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resort to oral testimony." *Id.; see also Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 769 (Tex.2007) (rule 11 is "essentially a 'statute of frauds' for settlement agreements"). The written memorandum need not be contained in one document. *Padilla*, 907 S.W.2d at 460. Whether a settlement agreement fails for lack of an essential term is a question of law. *See, e.g., E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex.App.-El Paso 2007, no pet.); *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex.App.-San Antonio 2002, pet. denied).

■ "A high-low agreement is defined as '[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial.' " *Employers Reinsurance Corp. v. Gordon*, 209 S.W.3d 913, 917 (Tex.App.-Texarkana 2006, no pet.) (quoting BLACK'S LAW DICTIONARY 746 (11th ed.2004)); *accord Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 344 n. 1 (Tex.App.-Houston [14th Dist.] 2008, pet. denied).

KBIC acknowledged in oral submission before this Court that, as the proponent of the agreement at issue, it had the burden to prove an enforceable rule 11 agreement.[4] The text of the email exchange shows the parties' agreement to "the new bookend range of $15,000 to $30,000." However, the email exchange does not state how the "new bookend range" is applicable to the litigation between the parties or to any settlement. Specifically, the email exchange does not state (1) to what the "new bookend range" applies, (2) that the "new bookend range" applies regardless of the outcome of the trial or other proceeding, or (3) who is to pay and who is to receive payments. *See Employers Reinsurance Corp.*, 209 S.W.3d at 917; *accord Baylor Coll. of Med.*, 247 S.W.3d at 344 n. 1. Consequently, we cannot conclude

---

4. KBIC argues in part in its reply brief in this Court that the testimony of Worldbridge's associate attorney at the March 25, 2009 proceeding constituted a "judicial admission" that "a valid Rule 11 agreement exists." The record shows that the associate attorney acknowledged on cross-examination that the email exchange was "an agreement," that it was filed, and that she had affixed her full name to the emails she sent. However, the associate attorney also testified at that proceeding that she did not intend for the email exchange to be a rule 11 agreement and she did not think it was a rule 11 agreement.

Further, she testified, "My understanding from this e-mail was that we agreed that we were going to continue to negotiate and that we would negotiate between those bookends." Therefore, to the extent KBIC contends its burden to prove the existence of a valid high-low rule 11 agreement was obviated by the associate attorney's testimony, we cannot agree. *See Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) ("A judicial admission must be a clear, deliberate, and unequivocal statement.").

the email exchange constitutes a "written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resort to oral testimony." *Padilla,* 907 S.W.2d at 460. We therefore conclude as a matter of law the email exchange was not an enforceable high-low rule 11 agreement and decide in favor of Worldbridge on the portion of its first issue challenging the existence of such an agreement; for the same reasons, we decide KBIC's second cross-issue against it.

The trial court's erroneous conclusion the parties reached an enforceable rule 11 agreement was the basis for the trial court's exclusion of Worldbridge's request for post-June 30, 2008 attorney's fees. As a result, we decide in favor of Worldbridge on subpart "(a)" of its first issue, in which it challenges the trial court's failure to allow the proffered attorney's fees evidence.

### 2. Pre–June 30, 2008 Attorney's Fees

Worldbridge contends in subpart "(b)" of its first issue that because there was no enforceable agreement to limit recovery of its attorney's fees in this case, it is entitled to recover the amount of its reasonable and necessary fees "proved and found" at trial. According to Worldbridge, this Court should render judgment as to those fees as a matter of law. Worldbridge asserts that under section 18.001 of the Texas Civil Practice and Remedies Code, the July 11 affidavit of counsel was sufficient to support the trial court's "finding" that $36,538 was a reasonable attorney's fee for work performed prior to July 2008.

KBIC claims the trial court never made "fact findings" based on Worldbridge's af-

fidavits. KBIC further asserts the trial court's finding number twenty-four that $6,239.77 is a reasonable and necessary attorney's fee was not challenged and is binding on the parties and the appellate court.

■▬▬▬ The parties do not dispute that a litigant who successfully defends a bill of review under the circumstances at issue is entitled to recover reasonable attorney's fees. *See Bakali v. Bakali,* 830 S.W.2d 251, 257 (Tex.App.-Dallas 1992, no writ) (party who successfully defends bill of review entitled to recover attorney's fees if such fees authorized for underlying case). Generally, a party seeking to recover attorney's fees carries the burden of proof to show reasonableness. *Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 547 (Tex.2009). Whether an attorney's fee award is reasonable is a question of fact. *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998).

With regard to whether Worldbridge "challenged" finding of fact number twenty-four that $6,239.77 was a reasonable and necessary attorney's fee, Worldbridge argues "that its first issue as to pre-June 30, 2008 fees—and its conditioning within the same issue on the unenforceability of the alleged 'high-low' agreement, which the trial court utilized to calculate the $6,239.77—fairly includes a challenge to the court's finding and award of only $6,239.77." We agree. *See Shaw v. Cnty. of Dallas,* 251 S.W.3d 165, 169 (Tex.App.-Dallas 2008, pet. denied) ("A challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact which the appellant challenges.") (citing *Tittizer v. Union Gas Corp.,* 171 S.W.3d 857, 863 (Tex.2005)); *see also* Tex.R.App. P. 38.1(f) ("The statement of an issue or point will be

treated as covering every subsidiary question that is fairly included.").

The trial court confirmed in its conclusions of law numbers five and six that the attorney's fee award of $6,239.77 was a mathematical calculation based on the rule 11 agreement. Based on our conclusion no enforceable rule 11 agreement existed, we conclude the evidence is legally insufficient to support the calculation underlying finding of fact number twenty-four. *See Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 479.

■■■ Additionally, we agree with Worldbridge that the trial court made a "finding" that $36,538.00 was a reasonable attorney's fee for work performed prior to June 30, 2008. The record shows counsel for Worldbridge argued at trial the amount of "$36,500" in pre-June 30, 2008 attorney's fees was "established as a matter of law" and then asked the trial court to "so rule." The trial judge stated, "Okay. I think it is," and asked to see a copy of the civil practice and remedies code. Then, the trial judge stated

> Okay. I make the following finding. I find that a reasonable and customary attorney's fee for the reasonable and necessary legal work done on behalf of [Worldbridge] in this cause from July 11th, 2008[sic], when [KBIC] started taking action in an attempt to set aside the [default judgment] through June 30, 2008, would be at least $36,538.

The record shows Worldbridge proposed a written finding of fact to that effect. Yet, the trial court made no such written finding of fact.[5] Nevertheless, the trial court's

"conclusion of law" number one states, "The sum of $36,538 is a reasonable and customary attorney's fee for the work done by Worldbridge's counsel from September 2007 through June 30, 2008." We are not bound to treat conclusion of law number one only as a conclusion of law. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n. 1 (Tex.1979) (where finding appears among conclusions of law, trial court's designation is not controlling on appeal). Here, although denominated a conclusion of law, the finding is as to a fact—the reasonable and customary attorney's fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001. As a result, we do not reach that portion of KBIC's third cross-issue in which it complains the trial court erred in ruling that Worldbridge had proven reasonable and necessary attorneys' fees in the amount of $36,538 "as a matter of law." It was the trial court's province as the fact finder to weigh the evidence and make a finding. KBIC offered no controverting proof of attorney's fees, the trial court noted inconsistencies in Worldbridge's proof in findings of fact numbers fifteen and sixteen, and it considered the evidence presented. Its finding that the sum of $36,538 was a reasonable and customary attorney's fee was supported by the evidence. We will not disturb such finding.

KBIC also argues in its third cross-issue the amount of Worldbridge's requested attorney's fees is unreasonable as a matter of law because Worldbridge was awarded only $19,500 in damages. KBIC argues "*Smith* held that an almost one-to-one ratio of damages ($65,000) to attorney's fees ($62,438.75)—and with the amount of attorneys' fees being actually slightly less

---

5. Case law provides "oral comments from the bench 'do not constitute findings of fact and conclusions of law.'" *In re Fortenberry*, 261 S.W.3d 904, 909–10 (Tex.App.-Dallas 2008, no pet.) (quoting *Sharp v. Hobart Corp.*, 957 S.W.2d 650, 652 n. 5 (Tex.App.-Austin 1997, no pet.) and citing *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984)).

than the damages—is unreasonable as a matter of law." According to KBIC, *Smith* "applies to all cases involving attorney fee affidavits and the reasonableness of fees in relation to the amount of the underlying amount awarded."

However, the court in *Smith* did not focus solely on a ratio of damages to attorney's fees. *Smith* involved a lawsuit based on an alleged breach of contract in which the plaintiff sought $215,391.50 in damages and $47,438.75 in attorney's fees. *Smith*, 296 S.W.3d at 546. Uncontroverted legal bills of several attorneys were offered in support of the attorney's fees request. *Id.* The jury awarded the plaintiff $65,000 in damages, but no attorney's fees. *Id.* at 547. The trial court rendered judgment notwithstanding the verdict on attorney's fees and awarded $7,500 for fees incurred through trial and up to $15,000 in attorney's fees for appeals. *Id.* Both sides appealed. *Id.* This Court vacated the $7,500 attorney's fee award and rendered judgment for $47,438.75 instead, because the plaintiff presented "competent, uncontroverted evidence" of its right to attorney's fees and the defendants did not challenge the amount, nature, or necessity of such fees. *Id.* The Texas Supreme Court reversed and remanded. *Id.* The supreme court concluded in relevant part that the attorney's fee at issue, "though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence such fees were warranted due to circumstances unique to this case." *Id.* at 548.

Here, counsel for Worldbridge testified in an affidavit as to the circumstances warranting the requested amount of $36,538 in pre-June 30, 2008 attorney's fees. Worldbridge asserts "KBIC points to no direct evidence to challenge the time spent, the necessity for the work performed, the rate of the fees, the skill of counsel, or even the uniqueness of the circumstances for [Worldbridge's] attorney's fees in this bill of review. It points only to the fees incurred in relation to the results obtained...." On this record, we cannot conclude the amount of $36,538 in pre-June 30, 2008 attorney's fees is unreasonable as a matter of law. *See id.* at 548–49 ("On retrial, the evidence may support a similar fee award, but that is a matter within the jury's purview.").

Based on the above analysis, we decide in favor of Worldbridge on the portion of subpart "(b)" of its first issue that it is entitled to pre-June 30, 2008 attorney's fees of $36,538 and against KBIC on its third cross-issue. We do not address the parties' remaining issues.

## IV. CONCLUSION

We conclude the trial court erred by determining the email exchange at issue was a valid and enforceable rule 11 agreement. Therefore, we reverse the trial court's judgment in that regard, including its award of $6,239.77 in attorney's fees. Further, we conclude the trial court's finding that the sum of $36,538 is a reasonable and customary attorney's fee is supported by the record and render judgment in that amount for Worldbridge's pre-June 30, 2008 fees. Finally, we conclude the trial court erred in denying Worldbridge the opportunity to present evidence supporting its claims for post-June 30, 2008 attorney's fees and remand this case to the trial court for a new trial as to those fees. Otherwise, we affirm the trial court's judgment.