**Affirm and Opinion Filed August 13, 2013**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-10-01358-CV**

**IN RE: THE ESTATE OF DAVID MACDONALD, DECEASED**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-08-11963**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]
Opinion by Justice Bridges

The Estate of David MacDonald, deceased, appeals the trial court's judgment awarding John Kidd damages in the underlying suit arising out of the death of Kidd's daughter, Laurenne Krystean Hall. In three issues, the Estate argues the trial court abused its discretion in excluding Laurenne's affidavit from a prior proceeding and admitting a photograph of Laurenne, and the evidence was factually insufficient to support the damages awarded. We affirm the trial court's judgment.

Scott Altman, a forensic engineer, conducted an accident reconstruction in this case. Altman testified that, on July 25, 2008 at 8:00 a.m. MacDonald was driving a 2000 Chevrolet Tahoe SUV westbound on U.S. Highway 87 outside of Dumas, Texas. MacDonald's wife, Kristina, and his step-daughter, Laurenne, were both passengers in the Tahoe. Perry Broderick,

---

[1] The Hon. Martin Richter, Justice, Assigned

driving an XIT Concrete tractor-trailer, was also westbound on Highway 87. MacDonald was driving behind Broderick when Broderick began to slow down and drifted to the right to make a left turn onto an agricultural access road. MacDonald attempted to pass Broderick on the left as Broderick was making a left hand turn. Broderick turned his left blinker on and began to turn left, but MacDonald was already in the passing lane. MacDonald steered farther to the left to try and avoid hitting the front of the truck as it cut in front of him, and he missed the front of the truck because Broderick stopped the truck. MacDonald drove slightly off the shoulder onto the left, dropped his left rear tire onto the road, came back up onto the road, and then rolled the Tahoe over. The Tahoe rolled "a hundred and fifty feet or so," according to Altman. No contact occurred between the Tahoe and the truck. As a result of the accident, MacDonald and Laurenne were killed and pronounced dead at the scene. Laurenne was ejected from the Tahoe as it rolled, and Kristina was severely injured during the accident.

Following the accident, Kristina filed suit against XIT Concrete asserting negligence claims. Kidd intervened, adopting the claims asserted against XIT and asserting negligence claims against MacDonald's Estate. Kidd sought damages from MacDonald's Estate for loss of companionship and society of his daughter, Laurenne, and mental anguish damages because of her death.

Laurenne was born in May of 1990 to Kristina and Kidd, who were not married. In November of 1991, Laurenne began living with Kidd at the home of Kidd's parents. In 1999, John and Amy Kidd were married. Kristina and MacDonald were married in May 2001. In September of 2006, when Laurenne was sixteen, Kristina filed a petition to change Laurenne's primary residence to be with her. Kidd did not contest that petition and agreed the court should enter an order changing where Laurenne lived. At the time of the accident Laurenne was still living with Kristina and MacDonald.

The Estate introduced into evidence an affidavit Laurenne executed in connection with the court proceeding to change her primary residence. The affidavit detailed why Laurenne wanted to reside with her mother. In the affidavit, Laurenne recounts domestic disturbances between her father and step-mother in October 2004 and July 2006. Laurenne stated that she called her mother on September 14, 2006 and had her mother come pick her up because she did not feel she was in a safe environment. Her affidavit states she was "fearful and [did] not want to return to [her] father." The trial court sustained Kidd's objections that the affidavit was irrelevant and its prejudicial effect would greatly outweigh its probative value.

During Kidd's testimony, a photograph of Laurenne lying dead in the road following the accident was admitted into evidence. Appellant objected that the photograph was "not relevant, not material, and highly prejudicial," but the trial judge overruled the objection and admitted the photograph into evidence. The first time Kidd saw the photograph was in April or May of 2010. Kidd's attorney showed him the photograph in response to his concerns about "to what degree she might have been mangled and stuff." Kidd testified seeing the photograph gave him some closure and peacefulness because it was not as bad as he had thought "in terms of what she had looked like."

The jury found XIT Concrete was 20% responsible for the accident, and MacDonald was 80% responsible. Although Kidd's attorney had asked the jury to award Kidd $2 million for the loss of companionship and mental anguish claims, the jury awarded Kidd $200,000 for past loss of companionship and society, $200,000 for future loss of companionship and society, $200,000 for past mental anguish, $200,000 for future mental anguish, and $12,000 for funeral and burial expenses. This appeal followed.

In its first issue, the Estate argues the trial court erred in excluding Laurenne's affidavit. Specifically, the Estate argues the affidavit was relevant to show the relationship between

–3–

Laurenne and Kidd and therefore relevant to Kidd's claim of loss of companionship and society. Further, the Estate argues the affidavit was admissible under rule of evidence 803 as a statement of Laurenne's then existing state of mind, emotion, sensation, or physical condition.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Serv. Corp Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011). We will affirm the trial court's ruling unless the court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2001). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Rule of evidence 803(3) provides that a statement of a declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health) but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. TEX. R. EVID. 803(3). Statements admitted under this exception are usually spontaneous remarks about pain or some other sensation, not readily observable by a third party, that the declarant makes when he experiences the sensation. *James v. Tex. Dep't of Human Servs.*, 836 S.W.2d 236, 243 (Tex. App.—Texarkana 1992, no writ); *see also Ochs v. Martinez* 789 S.W.2d 949, 959 (Tex. App.—San Antonio 1990, writ denied). The exception does not extend to statements of past external facts or conditions. *James*, 836 S.W.2d at 243; *Ochs*, 789 S.W.2d at 959.

At trial, the judge excluded Laurenne's affidavit after sustaining Kidd's "objections on the basis of hearsay, and 401, 402, and 403." We note Laurenne's affidavit referred to September 14, 2006 at which time Laurenne contacted her mother to pick her up because she "continued to feel that [she] was not in a safe environment." The affidavit, signed two days later

–4–

on September 16, contained Laurenne's statement that "I am fearful and do not want to return to my father." The affidavit's conclusion, Laurenne's request "that the Court consider [her] wishes to live with my mother and to allow [her] mother to make decisions for [her] regarding [her] place of residence and education," reflects the affidavit's purpose of securing a change in Laurenne's primary residence. We conclude Laurenne's statements in her affidavit signed two days after the night her mother came to pick her up were not statements of Laurenne's then existing state of mind or spontaneous remarks made while a sensation was being experienced such that they were admissible under rule 803(3). *See* TEX. R. EVID. 803(3); *James*, 836 S.W.2d at 243; *Ochs*, 789 S.W.2d at 959. Further, the affidavit containing Laurenne's statements in a conservatorship proceeding nearly two years prior to her death were not relevant to the damages suffered by Kidd due to the loss of his daughter's companionship and society. *See* TEX. R. EVID. 401. Under these circumstances, we conclude the trial court did not abuse its discretion in excluding Laurenne's affidavit from evidence. *See Guerra*, 348 S.W.3d at 235. We overrule the Estate's first issue.

In its second issue, the Estate argues the trial court erred in admitting a photograph of Laurenne lying in the road after the accident. Specifically, the Estate argues the photograph was irrelevant under rule of evidence 401 and therefore inadmissible under rule 402, and its probative value was substantially outweighed by the danger of unfair prejudice under rule 403. The Estate asserts the introduction of the photograph was intended to elicit, and did elicit, unfair prejudice and sympathy and misled the jury in connection with their determination of Kidd's damages.

Pictures or photographs that are relevant to any issue in the case are admissible. *Castro v. Cammerino*, 186 S.W.3d 671, 681 (Tex. App.—Dallas 2006, pet. denied); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 209 (Tex. App.—Texarkana 2000, pet. denied). An appellate court will not reverse a trial court's decision to admit or exclude a relevant photograph absent a

showing of an abuse of discretion. *Castro*, 186 S.W.3d at 680-81. Relevant evidence will not be excluded simply because it would create prejudice. *Castro*, 186 S.W.3d at 681; *Huckaby*, 20 S.W.3d at 209. The fact that photographs are gruesome does not render them inadmissible. *Castro*, 186 S.W.3d at 681; *Huckaby*, 20 S.W.3d at 209.

The photograph of Laurenne at issue here shows her body lying on its side with her face turned away from the camera. She is wearing shorts and a tshirt that is pulled up to leave her midriff bare. There is some light blood splatter on her legs and abdomen. However, there are no wounds or obvious damage to her body visible. At trial, Kidd testified he expressed to his lawyer "over and over" that he was worried about Laurenne's "condition there at the scene" of the accident. Kidd "struggled with not knowing and worrying about how or whether to what degree [Laurenne] might have been mangled and stuff and asked [his lawyer] to provide some closure to [him]." Kidd's lawyer showed him the picture of Laurenne's body, and Kidd was "relieved" that "there was some peacefulness there with her and it was maybe not as bad as what [he] had thought in terms of what she had looked like." Kidd testified the photograph was "the lasting image" he had of Laurenne. At issue in this case was Kidd's mental anguish following the death of Laurenne. We conclude the single picture of Laurenne's body was relevant to that issue. *See Huckaby*, 20 S.W.3d at 209. We overrule the Estate's second issue.

In its third issue, the Estate argues the evidence was legally and factually insufficient to support the damages awarded Kidd. When reviewing sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit evidence favorable to the trial court's decision if a reasonable factfinder could and disregard all contrary evidence that a reasonable factfinder could ignore. *Id.* At 827. We will sustain a no-evidence complaint when the record shows that (1) there is a complete absence of a

vital fact, (2) the court is barred by law or the rules of evidence from considering the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Guerra*, 348 S.W.3d at 228. More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* When a party attacks the factual sufficiency of the evidence on an adverse finding on an issue upon which the other party had the burden of proof, the attacking party must show that the evidence is insufficient to support the finding. *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 201 (Tex. App.—Austin 2005, pet. denied). We must consider and weigh all the evidence, and we should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Because damages for mental anguish and loss of companionship are "unliquidated and incapable of precise mathematical calculation, the jury is given significant discretion in fixing the amount of the award," so long as it has some evidentiary support. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998).

Here, the record shows Kidd and Laurenne's mother were not married when Laurenne was born in May 1990. At that time, Kidd was "nineteen or twenty." In November of 1991, Laurenne began living with Kidd at Kidd's parent's house. Kidd was responsible for changing Laurenne's diapers, rocking her to sleep, and feeding her. Kidd worked at a department store, and he was "always waiting for the new children's clothes to come in" so he could buy her whatever came in. Just before Laurenne began kindergarten in 1994, she and Kidd moved out into a house of their own. For five years, Kidd and Lauren lived alone together, and "a pretty strong bond" developed. Kidd volunteered at Laurenne's school, chaperoned field trips, and was "a part of her life." When Kidd married Amy in 1999, Amy was a first grade teacher and had

met Kidd while he was volunteering at the school. Lauren was a part of the wedding and was "very excited." Amy, Kidd, and Laurenne went on vacations together. But when Kidd and Laurenne took father daughter trips they went on trips exploring caves because Laurenne loved collecting rocks. Laurenne was involved in dance class, Girl Scouts, piano lessons, church basketball, and church choir. Kidd was with Laurenne when she learned to swim, when she learned to ride a bike, and when she started kindergarten. As she grew older, Laurenne was on the student council. She played YMCA basketball, which Kidd helped coach. In short, Kidd raised Laurenne from the time she was an infant until she was sixteen years old. In that time, Kidd was active in Laurenne's life and activities.

In September 2006, Laurenne began living with her mother. Nevertheless, Laurenne still had her room, clothes, doll collection, bed, jewelry, toiletries, and makeup at Kidd's house. Kidd took Laurenne to visit colleges during spring break 2007. At a July 4, 2008 party, Kidd saw Laurenne for the last time. During the three weeks that followed, Laurenne got ready to go to college and was preparing to go on a trip to Colorado with McDonald and Kristina. On the day of the accident, Amy awakened Kidd to tell him Laurenne "had been injured and was in the hospital." Amy was still on the telephone, and "she went silent." She clarified that Laurenne had died, and Kidd felt "like my heart had been ripped out of me." Within the hour, Kidd and his father drove to Amarillo and went to Dalhart where he had been told Laurenne's body was. Kidd went to the scene of the accident and "just stood there wondering what [Laurenne] felt or just wanted to be there for her." Since Laurenne's death, Kidd testified he would "break down every time [he saw] those things that remind[ed] him of" Laurenne. As discussed previously, Kidd struggled with not knowing how much suffering Laurenne had endured before she died. Thus, the record shows Kidd was a loving father who cared for his infant daughter and raised her until she was sixteen years old. After Laurenne moved to live with her mother, Kidd maintained

a room for Laurenne and continued to be a part of her life. After her death, Kidd continued to "break down" and kept "expecting her to come through the door." We conclude this evidence is legally and factually sufficient to support the jury's award of damages for Kidd's loss of consortium and mental anguish following Laurenne's death. *See Guerra*, 348 S.W.3d at 228; *Cain*, 709 S.W.2d at 176; *Ellis*, 971 S.W.2d at 406-07. We overrule the Estate's third issue.

We affirm the trial court's judgment.

101358F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: THE ESTATE OF DAVID
MACDONALD, DECEASED

No. 05-10-01358-CV

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-08-11963.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee John Kidd recover his costs of this appeal from appellant
the Estate of David MacDonald.

Judgment entered August 13, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE