

## IN THE
## TENTH COURT OF APPEALS

### No. 10-13-00026-CV

ELIZABETH CADY, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF DONALD
JASON WILDE, DECEASED,

          **Appellant**

 **v.**

JIMMIE LEE CARGILE AND TEXAS
PREMIER RESOURCES, LLC,

          **Appellees**

From the 249th District Court
Johnson County, Texas
Trial Court No. C201100149

## MEMORANDUM OPINION

Donald Wilde had been visiting at a friend's house. When he left that house after dark, he borrowed a pickup. Two miles down the road, Wilde crashed into the side of a tractor-trailer which was stuck and blocking both lanes of traffic. Wilde died as a result of that crash. Wilde's mother, Elizabeth Cady, filed a wrongful death action against Jimmie Lee Cargile, the driver of the tractor-trailer, and Texas Premier Resources, LLC,

the trucking company (collectively referred to as Cargile). After a jury trial, the jury found that Wilde's death resulted from his own negligence and did not award damages to Cady. The trial court signed a final judgment ordering that Cady take nothing on her claims. The trial court's judgment is affirmed.

**ADMISSION OF EXPERT TESTIMONY**

We first discuss Cady's second issue on appeal. In that issue, Cady contends the trial court erred in admitting Cargile's expert's testimony. Specifically, Cady complains the expert's testimony was irrelevant and unreliable.

When the offered evidence is the testimony of an expert witness, the court must apply the principles set forth in the rules governing expert testimony. *See* TEX. R. EVID. 702-705; *North Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex. App.—Dallas 1995, writ denied). A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified and (2) the testimony must be relevant and based on a reliable foundation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001); *see Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). Cady does not complain that Cargile's expert was not qualified.

Cady contends that the expert's testimony was unreliable because his methodology was unreliable and the analytical gap between the data and the opinion proffered was too great.

The trial court serves as an evidentiary gatekeeper by screening out irrelevant and unreliable expert evidence, and it has broad discretion to determine the admissibility of such evidence. *See Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 590 (Tex. 1999); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998); *see also E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). In assessing the reliability of expert testimony, a trial court is not to determine whether an expert's conclusions are correct, but only whether the analysis used to reach those conclusions is reliable. *Gammill,* 972 S.W.2d at 726. An expert's testimony can be unreliable if the expert draws conclusions based on flawed reasoning or "methodology." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). There also may be simply too great an "analytical gap" between the data and the opinion proffered for the opinion to be reliable. *Gammill*, 972 S.W.2d at 726. A trial court is not required to admit opinion evidence that is connected to existing data only by the unproved assertion of the expert. *Id*.

In *Robinson*, the Texas Supreme Court set out six factors that courts may consider in deciding whether expert testimony is reliable. *Robinson*, 923 S.W.2d at 557. These factors are non-exclusive and "are not always useful in evaluating expert testimony." *See Mendez*, 204 S.W.3d at 801 and 802. When the *Robinson* factors do not readily lend themselves to a review of the expert testimony, "there must be some basis for the opinion offered to show its reliability." *Gammill*, 972 S.W.2d at 726; *see Ford Motor Co. v.*

*Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007).  Experience alone may provide a sufficient basis for an expert's testimony in some cases.  *Gammill*, 972 S.W.2d at 726.  In automobile-accident cases, the Texas Supreme Court has found it appropriate to analyze whether the expert's opinion actually fits the facts of the case, presumably adopting the "analytical gap" test for automobile-accident cases.  *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 235, 239 (Tex. 2010).

Cargile's expert, Dr. John M. Talmadge, is a practicing physician and the Clinical Professor of Psychiatry at the University of Texas Southwestern Medical Center.  He is also a specialist in the treatment of addictions and general psychiatric disorders.  Over the years, he has taught at several medical schools in Texas.  In this case, Talmadge was asked to review available records and depositions that had been given up to that point in time.  He was also asked to look at relevant police reports and autopsy reports as well as some of the national standards used for evaluation of safety and substance abuse issues.  He testified that he had a basic understanding of the facts of the accident.

Talmadge agreed that he was not asked to provide any type of opinion as to what caused the accident and was not faulting one party over the other.  He also agreed that he was not an accident-reconstructionist and was not going to offer an opinion on what Wilde saw or should have seen at the time of the accident.

Talmadge reviewed materials which described Wilde's historical use of marijuana and methamphetamine.  He reviewed information from the deposition

testimony of several people who had known Wilde and knew that Wilde used drugs. Cindy Cook's deposition testimony showed that between 1997 and 2003, she and Wilde used drugs together. Cook had also spoken to Wilde on the phone within the last year before the accident and Wilde admitted that he had lost weight due to methamphetamine use. Cook's son's deposition testimony indicated that Wilde approached him about being a part of a drug-running/drug-dealing operation. The deposition testimony of April Hethcote indicated that when she and Wilde lived together between 2006 and 2008, Wilde was dealing methamphetamine. Friends of Wilde's, Mr. and Mrs. Hayes, had a history of drug use but had developed a no tolerance policy of drug use in their home. Sometime in 2009, Wilde went missing and when he surfaced again, the Hayeses took him into their home. Wilde admitted to them that during the time he was gone, he had been using methamphetamines. Talmadge further reviewed a termination report from an employer that Wilde had tested positive for marijuana in 2005.

Talmadge also reviewed the lab results from the medical examiner. He agreed that an amount of methamphetamine was found in Wilde's urine after the accident but that no type of drugs were found in Wilde's blood.

After reviewing all the materials provided, Talmadge formed an opinion that, like thousands of methamphetamine users and addicts treated in rehabilitation centers, with the pattern of long-term use and trace amounts of methamphetamine found by the

autopsy, Wilde was a long-time methamphetamine user; and even though Wilde may have stopped using for a time, he was probably using methamphetamines again. Talmadge had treated hundreds of people with a similar background and history of drug use. He also thought there was a high probability that Wilde never had intervention or treatment for his addiction and continued with the addiction until shortly before his death.

Talmadge agreed that he was not offering an opinion that Wilde was high or intoxicated on drugs or alcohol at the time of the accident. He also agreed that nothing in Wilde's blood would make Wilde high or impaired because of drugs. The opinion he offered was that it was highly probable that Wilde was in amphetamine withdrawal at the time of the accident. The period after stopping the use of methamphetamine is called a crash. A crash is characterized by fatigue, profound sleepiness, and exhaustion. Additionally individuals who crash suffer problems of concentration and attention and have slowed reaction times. This phenomenon has been measured on individuals in clinical studies. Individuals who crash also have difficulty adjusting to novel situations; if something is unexpected, they have difficulty adjusting to it, assessing it, sizing it up, processing it, and dealing with it. All of these phenomena would be consistent with not being able to operate a vehicle appropriately, particularly if an unusual situation was presented with a very brief time to react.

Talmadge asserted that his opinion was based on a reasonable degree of medical

probability. It was not an absolute, but a high degree of medical probability. He could not, however, say which particular withdrawal symptom Wilde may or may not have been suffering or the degree to which he was suffering. Talmadge was aware of reputable medical publications that document crash or withdrawal symptoms for methamphetamine users and had reviewed publications from the National Highway Traffic Safety Administration that addressed the withdrawal effect of methamphetamine on users. There were also two very large conventions or meetings held by the NTSA in the last 10 years which brought together people like Talmadge, academicians, clinicians, and people that have a lot of experience in the field to look at all the drugs that caused a high number of traffic accidents every year. The experts were brought together to define some of the terms that were often a little vague when used clinically.

An element that was discussed extensively and documented in the NTSA reports and findings was methamphetamine withdrawal. Talmadge opined that was common knowledge in law enforcement and medicine that amphetamine users and addicts experiencing a crash were very likely at least to be as dangerous on the road as people who were high on the drugs due to the factors Talmadge mentioned earlier in his testimony. These symptoms were quite specific to the long-term meth user; so much so, that many senior experts in the field were beginning to believe a separate kind of treatment program was needed for these people. According to these experts, a

methamphetamine user is in a category all its own.

Talmadge testified that the symptoms he described were consistent with the symptoms published in the National Highway Traffic Safety Administration Drug and Human Performance Fact Sheet. He also opined that the symptoms also compromised a person's ability to safely operate a motor vehicle.

After reviewing the testimony, we concur with the trial court's decision to allow Talmadge to testify. Although he did not testify as to any of the *Robinson* factors, we find that the *Robinson* factors do not readily lend themselves to a review of Talmadge's testimony and that Talmadge's experience provides an adequate basis for the reliability of his opinion. Further, although witnesses who were with Wilde several hours before the accident testified that Wilde did not use any drugs, because there was testimony of prior extensive drug use by Wilde and there was an amount of methamphetamine found in Wilde's urine, there was no analytical gap between the facts of the case and Talmadge's opinion. Cady's second issue is overruled.

## PRIOR DRUG USE

In her first issue, Cady contends the trial court abused its discretion in admitting evidence of Wilde's prior drug use. The complained of evidence was presented through the testimony of Cargile's expert, Dr. John M. Talmadge. Cady argues that Wilde's prior drug use was too remote and irrelevant; and if relevant, was "unduly prejudicial" pursuant to rule 403 of the Texas Rules of Evidence.

Determining whether to admit or exclude evidence lies within the trial court's sound discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *Id*. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012).

"All relevant evidence is admissible . . . ." TEX. R. EVID. 402. Relevant evidence is any "evidence having any tendency to make the existence of any fact more or less probable than it would be without the evidence." TEX. R. EVID. 401. Relevant evidence cannot be excluded simply because it would create prejudice. *See* TEX. R. EVID. 403; *Castro v. Cammerino*, 186 S.W.3d 671, 681 (Tex. App.—Dallas 2006, pet. denied). Instead, there must be a demonstration that the introduction of the evidence would be unfairly prejudicial to the objecting party. *Castro*, 186 S.W.3d at 681.

Generally, evidence of drug or alcohol use standing alone, does not establish negligence or proximate cause. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 798 (1951); *PPC Transp. v. Metcalf*, 254 S.W.3d 636, 642 (Tex. App.—Tyler 2008, no pet.);

*Trans-State Pavers, Inc. v. Haynes*, 808 S.W.2d 727, 733 (Tex. App.—Beaumont 1991, writ denied); *Gunter v. Morgan*, 473 S.W.2d 952, 954 (Tex. Civ. App.—Texarkana 1971, no writ). There must be evidence of negligence or other misconduct by the user which then can be considered by the jury in determining whether the driver committed an act of comparative negligence. *See id.*

Cargile pled the comparative and proportionate responsibility of Wilde as a producing or proximate cause of the accident. Cargile also presented expert testimony regarding whether Wilde could be suffering from symptoms of withdrawal of methamphetamines. To present that testimony, Talmadge testified that he relied on deposition testimony of several people close to Wilde during the last 13 years who stated that Wilde used methamphetamines and was a drug dealer. Moreover, there was earlier testimony that methamphetamine, while not found in Wilde's blood, was found in Wilde's urine after the accident. Further, there was testimony that Wilde failed to steer away from the accident until right before impact, a matter which concerned his vigilance, judgment, and reactions as a driver. Thus, we conclude Wilde's prior drug use was relevant.

Cady also complains that, even if relevant, the testimony was unduly prejudicial. According to Rule 403, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Other than citing three cases which in parentheticals note that the evidence excluded

could result in unfair prejudice or that the evidence was excluded pursuant to Rule 403, Cady fails to explain why the prior drug use testimony was "unduly" prejudicial in this case and should, therefore, have been excluded pursuant to Rule 403. She simply concludes that the testimony was "unduly" prejudicial. ("Such evidence is…unduly prejudicial under R. 403;" "Evidence Mr. Wilde allegedly abused and sold drugs or allegations years ago is…unduly prejudicial…."). As presented, this part of Cady's issue is improperly briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *Dorton v. Chase*, 262 S.W.3d 396, 400 (Tex. App.—Waco 2008, pet. denied).

Nevertheless, on the merits of the issue as we understand Cady's limited arguments, the testimony was tied to the testimony and opinions of Cargile's expert as explained above. As such, it was part of the basis of the expert's opinion.

Accordingly, the trial court did not err in allowing Cargile's expert to testify about Wilde's prior drug use. Cady's first issue is overruled.

**HEARSAY**

In her third issue, Cady complains that the trial court erred in admitting hearsay testimony regarding Wilde's relationship with his mother, Cady. Specifically, she contends that the testimony of April Hethcote regarding what Wilde said about his relationship with Cady is hearsay.

Cargile pursued this line of questioning with several witnesses. At the beginning

of the trial, the trial court initially sustained Cady's hearsay objection to what Wilde said about his relationship with Cady. After Cargile presented a trial brief arguing that the statements were admissions by a party-opponent and showed Wilde's state of mind, the trial court overruled Cady's objection. Several witnesses, including April, were allowed to testify as to what Wilde said about his relationship with Cady.

On appeal, Cady merely states in support of her issue, "There was no exception to the hearsay rule…It was hearsay under TRE 801-804 and should not have been admitted." She presents no case authority or argument as to why the statements would not be admissible as admissions of a party opponent or as statements regarding Wilde's state of mind as argued to the trial court by Cargile. Accordingly, this issue is improperly briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *Dorton v. Chase*, 262 S.W.3d 396, 400 (Tex. App.—Waco 2008, pet. denied).

Cady's third issue is overruled.

**PLAINTIFF'S EXPERT**

In her fourth issue, Cady contends the trial court abused its discretion in preventing Cady's expert from relying on a statement in a police report. Specifically, Cady wanted her expert to testify about a specific statement in the accident report upon which the expert relied to formulate his opinion.

Cargile argued at the beginning of the trial that the accident report was hearsay.

Further, in response to Cady's specific request for her expert to testify about a particular statement from the report, Cargile argued that the particular statement was speculative. On appeal, Cady only addresses Cargile's hearsay objection, stating that "[a]n expert may testify about hearsay which supports his opinions … (citations omitted)." She does not address Cargile's objection that the statement was speculative.

When an appellee urges several objections to a particular piece of evidence and, on appeal, the appellant complains of exclusion of the evidence on only one of those bases, the appellant has waived that issue for appeal because he has not challenged all possible grounds for the trial court's ruling that sustained the objection. *Collin Cnty. v. Hixon Family P'ship*, 365 S.W.3d 860, 877 (Tex. App.—Dallas 2012, pet. denied). Because Cady does not address Cargile's objection that the statement was speculative, she has waived any error that the statement was improperly excluded. Cady's fourth issue is overruled.[1]

**PRIOR ACCIDENT**

In her fifth issue, Cady argues that the trial court abused its discretion in excluding evidence of an earlier accident with a different Texas Premier Resources tractor-trailer where two motorists were killed. Cady claims that the accident was relevant to her negligence and gross negligence claims and her negligent entrustment

---

[1] Moreover, the trial court could have excluded the expert's underlying data because the danger that it would be used for an improper purpose outweighed its value as support for the expert's opinion or is unfairly prejudicial. *See* TEX. R. EVID. 705(d). *See e.g. Lerer v. Lerer*, 2002 Tex. App. LEXIS 8371 (Tex. App.—Dallas Nov. 26, 2002, pet. denied) (memo. op.).

and negligent training claims.

As we noted previously in this opinion, determining whether to admit or exclude evidence lies within the trial court's sound discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

Initially, we note that Cady's assertion that the prior accident was relevant to her negligent entrustment and negligent training claims was not presented to the trial court. Thus, her complaint as to these claims is not preserved for our review. *See* TEX. R. APP. P. 33.1. Further, Cady's gross negligence claim was non-suited. Thus, her complaint as to this claim is moot.

As to her remaining argument, similar events are admissible if the "earlier accidents occurred under reasonably similar but not necessarily identical circumstances." *Missouri Pac. R.R. Co. v. Cooper*, 563 S.W.2d 233, 236 (Tex. 1978); *McEwen v. Wal-Mart Stores*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. denied). In this case, the only circumstances made known to the trial court about the earlier accident was the following:

> Q: Y'all had another accident a month before this one in November of 2010 where a TPR truck was repositioning itself on a local road here in Johnson County and a couple of young men in a pickup drove into the side of it and were killed, right?
>
> A: Correct.

Circumstances, such as time of day, visibility, and road conditions, of the prior accident were not shown. Thus, we conclude that the trial court did not abuse its discretion by refusing to admit testimony about a prior accident that was not supported by a proper predicate that the earlier accident occurred under similar circumstances. *See Mo. P. R. Co. v. Cooper*, 563 S.W.2d 233, 237 (Tex. 1978). *See also U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 134 (Tex. 2012) (testimony is not sufficiently similar and distracted the jury from the relevant legal issues).

Accordingly, Cady's fifth issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
 Justice Davis, and
 Justice Scoggins
Affirmed
Opinion delivered and filed April 30, 2015
[CV06]

